Cherry **HEIDEMANN, a minor child, June Heidemann, mother and next friend, Nebraska Advocacy Services, Inc., a Nebraska Corporation, Appellees,**

v.

**Thomas L. ROTHER, individually and in his official capacity as the Superintendent of Schools for Tecumseh Public Schools; Colleen S. Naber, individually and in her official capacity as the Special Education Administrator for Tecumseh Public Schools; Donna Defreece, individually and in her official capacity as Special Education Teacher for Tecumseh Public Schools; Robyn Faris, individually and in her official capacity as Special Education Teacher for Tecumseh Public Schools; Linda Stone, individually and in her official capacity as Special Education Aide for Tecumseh Public Schools; Kathy Philippi, individually and in her official capacity as Special Education Aide for Tecumseh Public Schools; Karen Casey, individually and in her official capacity as Special Education Aide for Tecumseh Public Schools; Joe Grof, individually and in official capacity as member of School Board for Tecumseh Public Schools; Stacey Goodrich, individually and in official capacity as member of the School Board for Tecumseh Public Schools; Carla Meints, individually and in official capacity as member of the School Board for Tecumseh Public Schools; Rosemary Pella, individually and in official capacity as member of the School Board for Tecumseh Public Schools; Judy Vance, individually and in official**

---

capacity as member of the School Board for Tecumseh Public Schools; Howard Buethe, individually and in official capacity as member of the School Board for Tecumseh Public Schools; Tecumseh Public Schools, of Johnson County, Nebraska; Appellants.

Sharon Joy, individually, Defendant–Appellant.

Nos. 94–4112, 95–1136.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 18, 1995.

Decided May 23, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied July 1, 1996.

Brien M. Welch, Omaha, NE, argued (Terry J. Grennan, Omaha, NE, on the brief), for appellants Thomas L. Rother, et al., in No. 94-4112.

J. Michael Coffey, Omaha, NE, argued, for Sharon Joy in No. 95-1136.

Tania Diaz, Lincoln, NE, argued (Bruce G. Mason, Omaha, NE and Shirley Mora James,

Lincoln, NE, on the brief), for appellees in Nos. 94-4112 and 95-1136.

Before WHITE, Associate Justice (Ret.),[*] and McMILLIAN and LOKEN, Circuit Judges.

McMILLIAN, Circuit Judge.

This civil action was brought pursuant to 42 U.S.C. § 1983 by Cherry Heidemann (hereinafter Cherry), a minor, along with her mother, June Heidemann, and Nebraska Advocacy Services, Inc. (collectively plaintiffs), alleging violations of Cherry's constitutional rights to due process and equal protection and federal statutory rights under the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* (formerly the Education of the Handicapped Act (EHA)). The case is presently on interlocutory appeal from two collateral orders filed simultaneously by the district court on December 9, 1994. In the first order, the district court denied a motion for partial summary judgment on qualified immunity grounds brought by all but one of the defendants, including: the Tecumseh Public Schools, a/k/a School District # 49–0032 of Johnson County, Nebraska (the District); various individuals employed by the Tecumseh Public Schools, sued in their individual and official capacities; and members of the board of education of the Tecumseh Public Schools, sued in their individual and official capacities (collectively the school defendants). *Heidemann v. Rother,* No. 8:CV93–540 (D.Neb. Dec. 9, 1994) (*Heidemann I* ). In the second order, the district court denied a motion for partial summary judgment based on qualified immunity and other grounds brought by the remaining defendant, Sharon Joy, a licensed physical therapist whom plaintiffs sued individually because she provided services to Cherry under a contract with the Tecumseh Public Schools. *Id.* (*Heidemann II* ). For reversal, all of the defendants, including Joy, argue that they are entitled to qualified immunity as a matter of law because plaintiffs have failed to allege a violation of any clearly established constitu-

tional or federal statutory rights. Upon careful *de novo* review, and for the reasons discussed below, we reverse the orders of the district court and remand the case for further proceedings.

## Background

Cherry is a nonverbal, mentally and physically disabled girl who was nine years old at the time this action was filed, but functioned at approximately a one-year-old level. Joint Appendix at 331. Her disabilities include severe mental retardation, visual and hearing impairment, epilepsy, and learning disabilities. Prior to October 1993, she was enrolled in the District's special education programs. She attended school in the nearby School District of Elk Creek, Nebraska, which contracted with the District to provide special services to Cherry.

At times, Cherry's teachers used a treatment on her referred to as "blanket wrapping." The blanket wrapping involved binding her body with a blanket such that she could not use her arms, legs, or hands. Defendant Joy, a licensed physical therapist who operated under a contract with the District to provide physical therapy and related services to special education students, recommended the use of the blanket wrapping technique for Cherry. According to defendant Joy's affidavit, she

> recommended for the years 1992/1993 and 1993/1994 that the Tecumseh Public School educators of Cherry Heidemann consider blanket wrapping to provide said Cherry Heidemann with security and comfort and that the use of this treatment would also provide said Cherry Heidemann with warmth and stability and would have a calming effect on her.

Joint Appendix at 121. Plaintiffs agree that defendant Joy recommended the use of the blanket wrapping technique. Brief for Appellees at 44.

Defendants maintain that the blanket wrapping was therapeutic and calmed Cherry by giving her a sense of warmth and security. They allege that sometimes Cher-

---

[*] The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

ry would fall asleep while blanket wrapped because it calmed her. Defendants further claim that June Heidemann approved the use of blanket wrapping for Cherry and never voiced any objections to its use until on or about October 18, 1993, approximately one week before she removed Cherry from the District's special education programs.

Plaintiffs, by contrast, allege that the blanket wrapping was used as a means of physical restraint. They allege that it was administered as a substitute for educational and habilitative programming, merely for defendants' convenience. They allege that Cherry was wrapped against her will·for periods of one and a half hours or more. On October 6, 1993, June Heidemann allegedly found Cherry blanket wrapped on the floor, with flies crawling in and around her mouth and nose [1]; the blanket was so tightly wrapped, according to June Heidemann, that she needed assistance to remove it. She allegedly did not know that the blanket wrapping was being used in this manner. One week later, June Heidemann again found Cherry blanket wrapped on the floor and was again unable to remove the blanket without assistance. Shortly thereafter, June Heidemann removed Cherry from the Tecumseh public school system and enrolled her elsewhere.

Plaintiffs filed this § 1983 action in federal district court alleging that each of the defendants was directly or indirectly responsible for Cherry's blanket wrapping treatment and, accordingly, violated her constitutional rights to substantive and procedural due process and equal protection (among other constitutional rights) and her federal statutory rights under the IDEA and the Rehabilitation Act. The school defendants and defendant Joy separately filed motions for partial summary judgment seeking qualified immunity for their actions. In denying each of the two motions, the district court stated: "after careful consideration of the materials submitted ... the court concludes that factual disputes exist in this action such that genuine

issues of material fact remain for trial. See Fed.R.Civ.P. 56." *Heidemann I,* slip op. at 1; *Heidemann II,* slip op. at 2. The school defendants and defendant Joy separately appealed, and this court consolidated their appeals for purposes of oral argument. We now reverse the orders of the district court and remand this case to the district court for further proceedings consistent with this opinion.

## Discussion

*Jurisdiction to review summary judgment disposition*

In first considering our jurisdiction to review the issues presently on interlocutory appeal, we are guided by the Supreme Court's recent decision in *Behrens v. Pelletier,* —— U.S. ——, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (*Behrens*). In *Behrens,* the Supreme Court's primary holding was to reject the Ninth Circuit's one-interlocutory-appeal rule in the context of successive collateral orders addressing the same claim of qualified immunity. *Id.* at ——–——, 116 S.Ct. at 838–41. That holding has no application in the present case because this is defendants' first interlocutory appeal on qualified immunity grounds. However, *Behrens* also includes language which is highly instructive to our jurisdictional analysis in the present case. In *Behrens,* the defendant, an official with the Federal Home Loan Bank Board, had moved for summary judgment on qualified immunity grounds, arguing that his actions had not violated any clearly established right. *Id.* at ——, 116 S.Ct. at 838. The Supreme Court observed, "[t]he District Court denied the motion with the unadorned statement that '[m]aterial issues of fact remain as to [the defendant] on the *Bivens* [ [2]] claim.' " *Id.* Nevertheless, the Supreme Court held that the appeal to the Ninth Circuit was not barred from appellate review under the rule of limited interlocutory appellate jurisdiction announced in *Johnson v.*

---

1. Defendants maintain that flies tended to congregate in the special education rooms of the school building because the school was restricted from spraying in those rooms, due to allergies and other sensitivities of special education students.

2. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

*Jones,* —— U.S. ——, —— — ——, 115 S.Ct. 2151, 2156–57, 132 L.Ed.2d 238 (1995), because, in *Behrens,* the district court's denial of qualified immunity was *not* premised upon a specific finding of insufficient evidence to determine whether or not particular conduct had occurred. —— U.S. at ——, 116 S.Ct. at 842; *see also Miller v. Schoenen,* 75 F.3d 1305, 1309 (8th Cir.1996) ("if the issues relate to whether the actor actually committed the act of which he is accused, or damages, or causation, or other similar matters that the plaintiff must prove, we have no jurisdiction to review them in an interlocutory appeal of a denial of a summary-judgment motion based on qualified immunity"). Rather, the Supreme Court noted, "the District Court's denial of [the defendant's] summary-judgment motion necessarily determined that certain conduct attributed to [the defendant] (which was controverted) constituted a violation of clearly established law." *Behrens,* —— U.S. at ——, 116 S.Ct. at 842. In remanding the case to the Ninth Circuit for review of the denial of summary judgment on the defendant's qualified immunity claim, the Supreme Court explained that, notwithstanding the district court's "unadorned" ruling, which merely stated that "[m]aterial issues of fact remain,"

> *Johnson* permits [the defendant] to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the *Harlow* [3] standard of "objective legal reasonableness." This argument was presented by [the defendant] in the trial court, and there is no apparent impediment to its being raised on appeal. And while the District Court, in denying [the defendant's] summary judgment motion, did not identify the particular charged conduct that it deemed adequately supported, *Johnson* recognizes that under such circumstances "a court of appeals may have

to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Johnson, supra,* at ——, 115 S.Ct. at 2159. That is the task now facing the Court of Appeals in this case.

*Id.*

■■■ The procedural circumstances of the case before us are similar in many important respects to those which were before the Supreme Court in *Behrens.* In rejecting defendants' qualified immunity claim in the present case, the district court stated, without further explanation, that "factual disputes exist in this action such that genuine issues of material fact remain for trial." We, therefore, find it necessary to review the record and consider the legal context of plaintiffs' constitutional and statutory claims, in order to determine whether this interlocutory appeal raises abstract issues of law relating to qualified immunity over which we presently have jurisdiction. We hold that it does. Accordingly, consistent with the Supreme Court's guidance in *Behrens,* we now examine, as to each of plaintiffs' constitutional and statutory claims, (1) what material facts are not genuinely in dispute, viewing the evidence in the light most favorable to plaintiffs,[4] and (2) whether, assuming such facts, defendants infringed a clearly established constitutional or statutory right. —— U.S. at —— — ——, 116 S.Ct. at 841–42; *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (public officials are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known). In considering this latter question, we employ this court's analytical approach in *Foulks v. Cole County,* 991 F.2d 454, 456 (8th Cir.1993) (in reviewing the dis-

---

**3.** *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

**4.** This undertaking, which involves the traditional *de novo* review of the record on summary judgment, is characterized by the Supreme Court as a determination of " 'what facts the district court, in the light most favorable to the nonmoving party, likely assumed.' " *Behrens v. Pelletier,*

—— U.S. ——, ——, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996) (quoting *Johnson v. Jones,* —— U.S. ——, ——, 115 S.Ct. 2151, 2159, 132 L.Ed.2d 238 (1995)). Oftentimes it is, of course, merely a theoretical supposition that the district court "assumed" any particular facts in deciding to deny a motion for summary judgment on qualified immunity grounds.

trict court's denial of summary judgment based upon qualified immunity, the court considers: (1) whether a federal violation had been asserted; (2) whether the allegedly violated right was clearly established; and (3) whether, given the facts most favorable to the plaintiffs, a reasonable official would have known that the alleged actions violated that right; *see also Manzano v. South Dakota Dep't of Social Servs.*, 60 F.3d 505, 509 (8th Cir.1995) ("clearly established" means the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right; specific conduct need not have been previously held unlawful, so long as the unlawfulness is "apparent" in light of pre-existing law) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "Summary judgment is appropriate when there is no genuine issue of material fact that would allow a reasonable jury to find in favor of the non-moving party." *Miller v. Schoenen*, 75 F.3d at 1309 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)).

*Substantive due process claim*

■ Plaintiffs' substantive due process claim is governed by the Supreme Court's decision in *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). *Youngberg v. Romeo* concerned a profoundly retarded 33–year–old man named Nicholas Romeo, who had the mental capacity of an 18–month–old child. *Id.* at 309, 102 S.Ct. at 2454–55. He had been involuntarily committed to a state-operated hospital at the request of his mother. *Id.* Upon learning that Nicholas was being physically restrained for portions of the day, Paula Romeo, as his mother and next friend, sued three of the hospital's administrators pursuant to 42 U.S.C. § 1983, seeking damages for the alleged breach of Nicholas's constitutional rights based upon the allegation that the defendants were routinely restraining Nicholas for prolonged periods of time. *Id.* at 307, 310–11, 102 S.Ct. at 2454, 2455–56. The case proceeded to an eight-day jury trial, and the defendants prevailed. *Id.* at 311–12, 102 S.Ct. at 2455–56. On appeal to the Third

Circuit, the Court of Appeals, sitting en banc, reversed and remanded for a new trial, holding, among other things, that Nicholas's liberty interest in freedom of movement was a fundamental liberty "that can be limited only by an 'overriding, non-punitive' state interest." *Id.* at 313, 102 S.Ct. at 2456–57 (quoting the Court of Appeals' decision below, 644 F.2d 147, 157–58 (3d Cir.1980)). The Supreme Court agreed with the Third Circuit that Nicholas had a constitutionally-protected interest in freedom from bodily restraint. In discussing that interest, the Supreme Court explained, "[i]n other contexts, the existence of such an interest is clear in the prior decision of this Court. Indeed, '[l]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action.'" *Id.* at 316, 102 S.Ct. at 2458 (quoting *Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 18, 99 S.Ct. 2100, 2109, 60 L.Ed.2d 668 (1979) (Powell, J., concurring in part and dissenting in part)). The Court further noted "[t]his interest survives criminal conviction and incarceration. Similarly, it must also survive involuntary commitment." *Id.* The Supreme Court then went on to discuss the standards that were to be applied in that case. The Supreme Court held "[i]n determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society.'" *Id.* at 320, 102 S.Ct. at 2460 (citing *Poe v. Ullman*, 367 U.S. 497, 542, 81 S.Ct. 1752, 1776, 6 L.Ed.2d 989 (1961)). In vacating the decision of the Third Circuit, the Supreme Court explained:

We think the standard articulated by Chief Judge Seitz affords the necessary guidance and reflects the proper balance between the legitimate interests of the State and the rights of the involuntarily committed to reasonable conditions of safety and freedom from unreasonable restraints. He would have held that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several

professionally acceptable choices should have been made." 644 F.2d at 178. Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish. *Cf. Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). At the same time, this standard is lower than the "compelling" or "substantial" necessity tests the Court of Appeals would require a State to meet to justify use of restraints or conditions of less than absolute safety. We think this requirement would place an undue burden on the administration of institutions ... and also would restrict unnecessarily the exercise of professional judgment as to the needs of residents. *Id.* at 321–22, 102 S.Ct. at 2461–62. As the above-quoted language indicates, the Supreme Court rejected the standard applied by the Third Circuit's majority opinion and expressly adopted the standard articulated in the concurring opinion written by Chief Judge Seitz. *Id.* at 321, 102 S.Ct. at 2461. Elsewhere in its opinion, the Supreme Court noted that Judge Seitz had "concluded that the appropriate standard was whether the defendants' conduct was 'such a substantial departure from accepted professional judgment, practice, or standards in the care and treatment of [the] plaintiff as to demonstrate that the defendants did not base their conduct on a professional judgment.'" *Id.* at 314, 102 S.Ct. at 2457 (citing 644 F.2d at 178 (Seitz, C.J., concurring)).

■ In the present case, in light of the undisputed facts that Cherry has "verified severe mental retardation, epilepsy, visual impairments, hearing impairments, and learning disabilities," requiring special education programs and special education placement, Joint Appendix at 27 (Amended Complaint ¶¶ 26–27), we hold that her constitutionally-protected interest in freedom from bodily restraint in the context of her public school education must be evaluated under the standard adopted in *Youngberg v. Romeo*. Applying those standards, we conclude that the school defendants' conduct in using the blanket wrapping technique at defendant Joy's recommendation did not violate Cherry's clearly established right to be free from unreasonable bodily restraint. Defendant Joy is unquestionably a licensed professional therapist. Moreover, plaintiffs concede that the school defendants were following the recommendation of defendant Joy in using the blanket wrapping treatment. *See* Brief for Appellees at 44. Certainly, even if the blanket wrapping treatment did constitute a substantial departure from professional norms (which it did not), a reasonable official would not have known that to be true. Therefore, the school defendants are entitled to qualified immunity on this claim as a matter of law.

■ Plaintiffs allege, and we assume for purposes of this summary judgment analysis, that defendant Joy, as a contract employee of the District, was acting under color of state law in recommending the use of blanket wrapping for Cherry. We note that *Youngberg v. Romeo* does not specifically address the constitutional standard to be applied to substantive due process claims against defendants like Sharon Joy, the very professional upon whom the school defendants relied for guidance in treating Cherry. The constitutional standard which we infer from *Youngberg v. Romeo* is that her recommendation must be within the scope of "professionally acceptable choices." In other words, a finding that defendant Joy violated Cherry's substantive due process rights would require no less that a finding that her recommendation represented a *substantial departure* from accepted professional judgment, practice, or standards.

■ In considering whether defendant Joy is protected by qualified immunity for recommending the blanket wrapping treatment for Cherry, we note that the traditional objective reasonableness test is unworkable. In other words, we cannot logically say that, even assuming the blanket wrapping treatment was not within the realm of professionally acceptable choices, a reasonable professional such as defendant Joy would not have known that to be true. Plaintiffs' assertion that defendant Joy violated Cherry's right to freedom from bodily restraint falls within a class of constitutional

claims for which "it is nearly impossible to separate the constitutional violation analysis from the clearly established right analysis." *Manzano*, 60 F.3d at 510.[5] Accordingly, we hold that, when an authorized professional acting under color of state law exercises professional judgment in treating a disabled individual under the state's care, and that exercise of judgment would otherwise cause unconstitutional bodily restraint, he or she is entitled to qualified immunity if such treatment is within the scope of professionally acceptable choices, which, for purposes of judicial review, is broadly defined to include any choice that is not a *substantial departure* from accepted professional judgment, practice, or standards.

In the present case, defendant Joy stated in her affidavit that "blanket wrapping for individuals such as Cherry Heidemann was and is an accepted practice in the field of pediatric physical therapy and occupational therapy" and "the use of blanket wrapping was the most effective and least restrictive form of treatment for an individual such as Cherry Heidemann at the time of the incidents complained of." Joint Appendix at 121 (affidavit of Sharon Joy). Although plaintiffs have submitted affidavits showing that other professionals in the field would not have recommended the use of blanket wrapping in this particular case or in the manner applied in this case,[6] we hold that plaintiffs' submission of evidence on summary judgment was

**5.** In *Manzano v. South Dakota Dep't of Social Servs.*, 60 F.3d 505, 510–11 (8th Cir.1995), we recognized that, because the abstract substantive due process right to familial integrity in the child abuse investigation context requires balancing a liberty interest against the governmental interest in protecting minor children, the traditional qualified immunity analysis would be impracticable. Moreover, proof of a clearly established right would be "particularly formidable." *Id.* at 510. In that context we held that "when a state official pursuing a child abuse investigation takes an action which would otherwise unconstitutionally disrupt familial integrity, he or she is entitled to qualified immunity if such action is properly founded upon a reasonable suspicion of child abuse." *Id.* at 511.

**6.** One of plaintiffs' experts, Penny White–Romero, a licensed physical therapist, gave the following opinion:

7. The practice of wrapping a child in a blanket to promote calm and relaxation is not a widely used practice, and should only be performed in a certain fashion and under appropriate circumstances. Since I have become licensed as a physical therapist, I have attempted its use on only 2 or 3 children, each for a period of a month or two.

8. The use of a blanket to provide relaxation is not a therapeutic technique, but is used to prepare the child for therapy. When used, the blanket should be folded over the child so that it enfolds them, and should be left on the child for a maximum of ten (10) minutes. The purpose of this method is to decrease excessive external stimuli so that the child can participate in and receive therapy and instruction. Leaving the blanket on the child for more than a ten (10) minutes period is inappropriate because the presence of the blanket ceases to serve its purpose once the child is accustomed to it.

9. The standard course of practice in this field for inducing relaxation prior to therapy

would also include the use of other methods in lieu of blanket wrapping. For example, excessive external stimuli can be relieved by redirecting the child, or by removing the child to a quieter environment.

10. In my opinion, wrapping a child in a blanket so tightly that they cannot move, and leaving the child so wrapped for an hour would constitute restraint, and would clearly fall outside of the scope of the appropriate use of the method, that being blanket wrapping. Joint Appendix at 179 (affidavit of Penny White–Romero).

Plaintiffs' other expert, Kenneth D. Keith, Ph. D., gave the following opinion:

7. Based upon my review ... it is my opinion that the blanket wrapping technique was used on Cherry Heidemann as a behavior management tool. The technique was used in order to produce physical restraint to address behaviors such as kicking, hitting and biting. As such, this technique would be recognized by behavior analysts as an aversive behavior management technique.

8. Prior to the use of an aversive behavior management tool, it is necessary that data be collected as a baseline on the behaviors in question. It is necessary to use these data to first develop behavior management programming using non-restrictive techniques. Data must be collected to determine the effectiveness of those techniques. Use of an aversive, restrictive technique should be considered only after a documented showing that less restrictive techniques are ineffective. At that point, the aversive method should be used only in conjunction with a non-restrictive method of addressing the problem behaviors.

9. Aversive behavior management techniques such as the one used on Cherry Heidemann must be utilized appropriately and with the aforementioned safeguards. Aversive methods are subject to abuse and misuse, and when used inappropriately or for convenience

insufficient to create a genuine dispute as to whether the blanket wrapping treatment represented a substantial departure from accepted professional judgment, practice, or standards in the care and treatment of Cherry. Accordingly, defendant Joy is protected by qualified immunity as a matter of law. A decision to the contrary, we believe, "would restrict unnecessarily the exercise of professional judgment as to the needs" of special students such as Cherry. *Youngberg v. Romeo*, 457 U.S. at 322, 102 S.Ct. at 2461–62.

*Equal protection claim*

■ We next turn to plaintiffs' equal protection claim. Defendants argue that plaintiffs have failed as a matter of law to allege a violation of a clearly established constitutional right. We agree. In *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 442, 105 S.Ct. 3249, 3255–56, 87 L.Ed.2d 313 (1985), the Supreme Court specifically held that mental retardation is not "a quasi-suspect classification calling for a more exacting standard of judicial review than is normally accorded economic and social legislation." The Court went on to explain:

> [h]ow this large and diversified group is to be treated under the law is a difficult and often a technical matter, very much a task for legislators guided by qualified professionals and not by the perhaps ill-informed opinions of the judiciary. . . .
>
> . . . .
>
> Doubtless, there have been and there will continue to be instances of discrimination against the retarded that are in fact invidious, and that are properly subject to judicial correction under constitutional norms. But the appropriate method of reaching such instances is not to create a new quasi-suspect classification and subject all governmental action based on that classification to more searching evaluation.

*Id.* at 442, 443, 105 S.Ct. at 3255–56, 3256.[7] The Supreme Court thus held that the rational basis test applies to equal protection claims of this nature.

■ In view of the facts that the school defendants were following defendant Joy's recommendation in using the blanket wrapping technique, that defendant Joy is a licensed professional therapist, and that her recommendation has not been shown to be beyond the scope of professionally acceptable choices, we hold that plaintiffs have failed to genuinely dispute the fact that defendants' actions, including defendant Joy's recommendation of the blanket wrapping treatment, were rationally related to a legitimate governmental purpose—namely, providing appropriate care for Cherry as part of her public school education. *See id.* at 442, 105 S.Ct. at 3255–56 ("the States' interest in dealing with and providing for [their mentally retarded citizens] is plainly a legitimate one"). Accordingly, we hold that it is beyond genuine dispute that Cherry's equal protection rights were not violated. Because there is no genuine issue of material fact as to whether defendants violated Cherry's clearly established equal protection rights, defendants are entitled to qualified immunity on this claim as a matter of law.[8]

*Rehabilitation Act claim* .

We next consider plaintiffs' claim that defendants violated Cherry's rights under the Rehabilitation Act. Defendants incorrectly cite *Lue v. Moore*, 43 F.3d 1203 (8th Cir. 1994), for the general proposition that "the qualified immunity defense applies to *all* actions brought under the Rehabilitation Act of 1973 § 504(a)." Brief for Appellants (school defendants) at 21 (emphasis added). In *Lue v. Moore*, this court noted that, while the Rehabilitation Act does permit private damages claims against public officials under 42

---

of staff persons prove harmful and detrimental to the health and well being of the child subjected to such treatment.
*Id.* at 162 (affidavit of Kenneth D. Keith).

**7.** In their response on appeal, plaintiffs do not dispute that Cherry is not a member of a suspect or quasi-suspect class for equal protection purposes. Instead, they now attempt to frame their

equal protection claim as essentially the same as their statutory claims.

**8.** We find plaintiffs' claims of unconstitutional corporal punishment and violation of Cherry's rights under the privileges and immunities clause to be wholly without factual or legal foundation. Accordingly, defendants are entitled to qualified immunity on those claims as well.

U.S.C. § 1983, "qualified immunity is *available*" in such actions. 43 F.3d at 1205 (emphasis added). This court then went on to explain "[q]ualified immunity shields the defendants from liability unless they violated [the plaintiff's] clearly established rights under the Act and reasonably should have known they were doing so." *Id.* (citing *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738). In *Lue v. Moore,* this court reviewed the record in the light most favorable to the plaintiff and concluded that no violation of the Rehabilitation Act had occurred as a matter of law. 43 F.3d at 1206.

Section 504(a) of the Rehabilitation Act, 29 U.S.C. § 794(a), provides in pertinent part: "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Plaintiffs fail to identify specific facts which support their claim that defendants have excluded Cherry, denied her benefits, or have subjected her to discrimination solely by reason of her disability. They merely assert "[t]he school may not deny the student with handicaps an opportunity to participate in programs that is not equal to that afforded other students without handicaps, or provide different or separate services to such students unless such action is necessary." Brief for Appellees at 34. Thus, we assume plaintiffs' § 504 claim to be that defendants subjected Cherry to the blanket wrapping treatment unnecessarily and solely on account of her disability, in violation of her rights under the Rehabilitation Act.

In *Monahan v. State of Nebraska,* 687 F.2d 1164, 1170–71 (8th Cir.1982) (*Monahan*), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983), we reasoned that the standard to be applied in Rehabilitation Act cases involving public school education of children with disabilities is similar to the standard that was adopted in *Youngberg v. Romeo.* Thus, in considering the viability of the plaintiffs' challenge in that case to the placement of their handicapped children, this court held that

either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children.... The standard of liability we suggest here ... reflects what we believe to be the proper balance between the rights of handicapped children, the responsibilities of state educational officials, and the competence of courts to make judgments in technical fields. So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under § 504.

*Id.* at 1171.

As we concluded above, defendants did not depart grossly from acceptable standards among qualified professionals, even viewing the evidence in the light most favorable to plaintiffs. There being no genuine issue of material fact as to whether defendants violated Cherry's clearly established rights under the Rehabilitation Act, defendants are entitled to qualified immunity on this claim as a matter of law.

*IDEA claim*

Finally, we consider plaintiffs' claim that defendants have violated the IDEA. Plaintiffs allege, among other things, that defendants failed to adequately inform June Heidemann of the true nature and degree of use of the blanket wrapping treatment for Cherry, or to obtain June Heidemann's consent to the treatment as it was actually used, in violation of the statutory requirements for developing and implementing an individualized education program (IEP) for Cherry, as required under 20 U.S.C. § 1401(a)(20).

In this appeal, defendants assert that they are entitled to qualified immunity as a matter of law on plaintiffs' IDEA and related procedural due process claim because no private cause of action exists under the statute for recovery of general damages. Plaintiffs' IDEA and related procedural due process claims (along with all their other claims) seek "general damages for pain, suf-

fering, emotional anxiety, distress, and loss of skills" and punitive damages. Joint Appendix at 45–46 (Amended Complaint, prayer for relief).[9]

■ We specifically do not reach the merits of plaintiffs' assertions that defendants failed to comply with the procedures set forth in the IDEA and effectively denied Cherry a "free appropriate public education." We simply hold that plaintiffs' claims based upon defendants' alleged violations of the IDEA may not be pursued in this § 1983 action because general and punitive damages for the types of injuries alleged by plaintiffs are not available under the IDEA. In reaching this conclusion, we agree with the Sixth Circuit's reasoning in *Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 980 F.2d 382 (6th Cir.1992) (*Crocker*). While *Crocker* was factually very different from this case, it presented a similar legal question: whether the plaintiffs could pursue a claim for general damages pursuant to § 1983 based upon the defendants' alleged violations of the EHA (the predecessor of the IDEA). The court in *Crocker* stated "we do not find case authority interpreting the Act to allow an award of general damages for emotional injury or injury to a dignitary interest." *Id.* at 386. Quoting *Burlington Sch. Comm. v. Massachusetts Dep't of Educ.*, 471 U.S. 359, 370–71, 105 S.Ct. 1996, 2002–03, 85 L.Ed.2d 385 (1985), the Sixth Circuit interpreted the Supreme Court's decision in that case as implicitly holding that the EHA did not allow "damages" in general but rather only allowed "'reimbursement [of] ... expenses that it

[the municipal government] should have paid all along and would have borne in the first instance had it developed a proper IEP.'" *Crocker*, 980 F.2d at 386. Notably, the Sixth Circuit went on to state "[w]e read *Miener v. State of Missouri*, 800 F.2d 749, 752–54 (8th Cir.1986), and *Anderson v. Thompson*, 658 F.2d 1205, 1210–14 (7th Cir.1981), as suggesting the same approach." *Crocker*, 980 F.2d at 386.[10] We now hold as a matter of law that plaintiffs in the present case cannot recover general or punitive damages arising out of defendants' alleged violations of the IDEA and, accordingly, defendants are entitled to qualified immunity for plaintiffs' IDEA claim and related procedural due process claim.

## Conclusion

For the foregoing reasons, we hold that the district court erred in denying both the school defendants' motion for partial summary judgment and defendant Joy's motion for partial summary judgment on the basis of their qualified immunity defenses. The orders of the district court are reversed and the case is remanded for further proceedings consistent with this opinion.

---

9. The question of whether plaintiffs have asserted a statutory violation which is privately enforceable in this § 1983 action is squarely within the scope of our appellate jurisdiction. *Behrens v. Pelletier*, —— U.S. ——, ——, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996) (summary judgment determinations are immediately appealable when they resolve disputes concerning abstract issues of law relating to qualified immunity). If plaintiffs have failed to assert a cognizable statutory violation, that failure would dispose of the qualified immunity issue at the first stage of the three-step inquiry set forth in *Foulks v. Cole County*, 991 F.2d 454, 456 (8th Cir.1993) (first question is whether a violation has been asserted).

10. In *Miener v. State of Missouri*, 800 F.2d 749, 754 (8th Cir.1986), this court stated

[t]he relief [the plaintiff] requests is entirely consistent with [Congress's] goal, since she wishes to recover compensatory educational services to remedy denial of the benefits Congress sought to protect through denying a damages remedy, a free appropriate education....

....

Our conclusion that [the plaintiff] may recover compensatory educational services under the EHA does not obviate the necessity of determining whether she has also stated a claim for violations of the Rehabilitation Act ... or a claim under § 1983 for violations of the Due Process Clause; if [the plaintiff] succeeds on either of these claims she might obtain relief, such as general damages or attorney's fees, not available under the EHA. However, we conclude that the plaintiff has not succeeded on either point.