The Honorable Ed Wilkinson State Representative P.O. Box 610 Greenwood, Arkansas 72936
Dear Representative Wilkinson:
This is in response to your request for an opinion regarding the teacher certification requirements for home schooling handicapped children. You enclosed with your correspondence a copy of a letter from a constituent, Ms. Norma Lucas. The correspondence attached to your request indicates a question as to whether A.C.A. § 6-15-506 (Repl. 1993) unconstitutionally discriminates against handicapped children by requiring that the parent/teacher of a handicapped child be certified to teach special education courses in order for the child to participate in a home school program. Specifically, your constituent questions whether "handicapped" is now considered a suspect classification for purposes of equal protection analysis. I assume that a "handicapped" child is one identified as needing special education services consistent with A.C.A. §6-15-506.[1]
This office issued an opinion regarding this issue (Op. Att'y Gen. No. 85-146), which I am enclosing for your review. In that opinion it was concluded that "handicapped" was not a suspect classification and that "[b]ecause there are many obvious reasons why the State would be justified in ensuring an adequate education for handicapped children, the classification in question would appear to pass constitutional muster." In my opinion, the relevant constitutional law has not changed regarding this issue.
When considering the validity of a statute, the Arkansas Supreme Court presumes the statute is constitutional, and all doubts are resolved in favor of constitutionality. Reed v. Glover, 319 Ark. 16, 889 S.W.2d 729
(1994). Arkansas Code Annotated § 6-15-506(a) provides in part:
 Any student who has been identified pursuant to the provisions of Public Law 94-142 and § 6-41-201 et. seq. as needing special education services shall not be eligible to meet the requirements of compulsory attendance by participating in a home school program unless the parent/teacher of such child holds a valid certification from the State of Arkansas to teach special education courses in a public or private school.
In deciding whether an equal protection challenge is warranted, there must first be a determination that there is a state action which differentiates among individuals. Pledger v. Featherlite Precast Corp.,308 Ark. 124, 823 S.W.2d 852, cert. denied 113 S.Ct. 82 (1992). In my opinion, A.C.A. § 6-15-506 differentiates between the students needing special education services that participate in a home school program and all other students that participate in a home school program.
The United States Supreme Court, however, has refused to recognize "mental retardation" as a quasi-suspect class; the court concluded that in order to withstand equal protection review, legislation that distinguishes between the mentally retarded and others need only be rationally related to a legitimate governmental purpose. Cleburne v.Cleburne Living Center, 473 U.S. 432 (1985); see also Heidemann v.Rother, 84 F.3d 1021 (8th Cir. 1996). It should be noted that some scholars contend that Congress passed the Americans with Disabilities Act in order to mandate a heightened level of judicial scrutiny in cases of discrimination based on disability, including mental retardation. Comment, The Americans with Disabilities Act: Will the Court get theHint? Congress' Attempt to Raise the Status of Persons with Disabilitiesin Equal Protection Cases, 15 Pace L. Rev. 621 (1995); see also Note, TheAmericans with Disabilities Act of 1990: A Congressional Mandate forHeightened Judicial Protection of Disabled Persons, 44 Fla. L. Rev. 417 (1992). Although the Eighth Circuit has stated that the Americans with Disabilities Act does not purport to alter the standard for constitutional equal protection claims, More v. Farrier, 984 F.2d 269,271 n. 4 (8th. Cir.), cert. denied 510 U.S. 819 (1993), the United States Supreme Court has not addressed this issue. Further, it has also been argued that the Court in fact used a more "sharply focused" rational basis test in Cleburne rather than the traditional deferential approach. Comment, supra. Finally, it has been stated that there is no fundamental right of parents to supervise a child's education to the extent where parents are completely responsible for every aspect of that education.Murphy v. State of Arkansas, 852 F.2d 1039 (8th Cir. 1988).
When the Arkansas Supreme Court considers an equal protection challenge to a state legislative classification scheme which does not involve either a "suspect" class or a "fundamental" right, the statute will be upheld if the classification bears some rational relationship to a permissible state objective. Estate of Epperson, 284 Ark. 35,679 S.W.2d 792 (1984); see also U.S. v. Blumberg, 961 F.2d 787 (8th Cir. 1992). In applying this test, the court will merely consider whether any rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives, so that the legislation is not the product of utterly arbitrary and capricious government purpose and void of any hint of deliberate and lawful purpose. Reed v. Glover, 319 Ark. 16,889 S.W.2d 729 (1994). This is an extremely lenient test, and any party that challenged the legislation would have the burden of proving that the act was not rationally related to achieving any legitimate objective of state government under any reasonably conceivable state of facts. SeeReed,supra.
In my opinion, A.C.A. § 6-15-506 is not completely devoid of a legitimate purpose. The General Assembly may reasonably have concluded that the educational needs of those students needing special education services were greater than the educational needs of other students who were home schooled. Consequently, it is my opinion that A.C.A. § 6-15-506 is supported by a rational basis and could withstand an equal protection challenge.
It is also my opinion, however, that the application of A.C.A. § 6-15-506
might be susceptible to a separate challenge under the Rehabilitation Act, 29 U.S.C.A. § 794.[2] Section 794(a) provides in part:
 No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service.[3]
The United States Supreme Court has stated that the act "requires only that an `otherwise qualified handicapped individual' not be excluded from participation in a federally funded program `solely by reason of his handicap,' indicating only that mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context." Southeastern Community College v. Davis, 442 U.S. 397 (1979). A.C.A. § 6-15-506 could be susceptible to a challenge under this act because handicapped children are precluded from participation in the "standard" home schooling "program." However, with regard to the placement of handicapped children, the Eighth Circuit has stated:
 [E]ither bad faith or gross misjudgment should be shown before a [Rehabilitation Act] violation can be made out, at least in the context of education of handicapped children. . . . The standard of liability we suggest here . . . reflects what we believe to be the proper balance between the rights of handicapped children, the responsibilities of state educational officials, and the competence of courts to make judgments in technical fields. So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under [the Rehabilitation Act].
Heidemann, supra (quoting Monahan v. State of Nebraska, 687 F.2d 1164
(8th. Cir. 1992), cert. denied, 460 U.S. 1012 (1983)). In Monahan, the court recognized that the references in the Rehabilitation Act to "discrimination" required something more than an incorrect evaluation or a substantively faulty individualized education plan. Further, some courts have even concluded that the Rehabilitation Act requires a case-by-case analysis of disabled individuals and that a blanket exclusionary policy is highly suspect. See Stillwell, supra; Coleman v.Zatechka, 824 F.Supp. 1360 (D.Neb. 1993). In Coleman, the court conducted an analysis of the individual plaintiff and struck down a university's blanket policy prohibiting the assignment of roommates to students with disabilities who required personal attendant care.
In order to establish a violation of the Rehabilitation Act, a plaintiff is required to prove four elements: (1) the plaintiff is handicapped, (2) the plaintiff is otherwise qualified for participation in the program, (3) the program receives federal financial assistance, and (4) the plaintiff was subjected to discrimination by a program receiving federal financial assistance. Oxford House-C v. City of St. Louis,843 F.Supp. 1556 (E.D.Mo. 1994). Although this opinion assumes that the child in question is handicapped, the child would still have to establish that he or she was otherwise qualified to participate in the home schooling "program." The United States Supreme Court has stated that "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicaps." Southeastern Community College,supra. Courts, however, are prohibited from requiring a fundamental alteration in a program to accommodate an individual; if a handicapped individual cannot be reasonably accommodated, then he cannot be otherwise qualified. Kohl by Kohl v. Woodhaven Learning Center, 865 F.2d 930,cert. denied 493 U.S. 892 (1989). In any event, the determination of whether a child is "otherwise qualified" is essentially a question of fact to be resolved by a court.
Next, it must be determined whether the availability of home schooling as an alternative to satisfying the compulsory school attendance requirement is a "program or activity" pursuant to 29 U.S.C.A. § 794. Section 794 has been expanded to provide in part:
 For the purposes of this section, the term "program or activity" means all of the operations of —
 (1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
 (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.
 (2)(A) a college, university, or other postsecondary institution, or a public system of higher education; or
 (B) a local educational agency (as defined in section 8801 of Title 20) system of vocational education, or other school system.
The Eighth Circuit has recognized that the definition of "program or activity" found in § 794 is inclusive. Thomlison v. City of Omaha,63 F.3d 786 (8th. Cir. 1995). Assuming that the Department of Education receives federal financial assistance, § 794 prohibits discrimination against an individual solely by reason of her disability in "all of the operations" of the agency. It is unclear, in my opinion, whether the operation of a home schooling program administered by a parent would be held a "program or activity" of the Department of Education for purposes of the Rehabilitation Act. Again, this raises a fact question which cannot be resolved in an opinion.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] I also assume that the applicable school district offers an appropriate public education for the handicapped child in compliance with the Individuals with Disabilities Education Act (formerly the Education for Handicapped Act), 20 U.S.C.A. § 1400 et. seq. The IDEA provides federal money to assist state and local agencies in educating disabled persons and codifies the goal that "all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." Light v. Parkway C-2 School Dist., 41 F.3d 1223 (8th Cir. 1994), cert. denied 115 S.Ct. 2557; Peterson v. Hastings Public Schools,31 F.3d 705 (8th. Cir. 1994). It should also be noted that the IDEA is the exclusive remedy for a handicapped child asserting the right to a free appropriate public education. Smith v. Robinson, 468 U.S. 992
(1984).
[2] An individual may bring both an equal protection claim and a Rehabilitation Act claim. See Heidemann, supra.
[3] Similarly, the Americans with Disabilities Act,42 U.S.C.A. §§ 12131-12165, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The definition of public entity includes any department or agency of a state, regardless of whether they receive federal funds. See Stillwell v. Kansas City, Mo. Bd.of Police Com'rs, 872 F. Supp 682
(W.D. Mo. 1995).