WOLLMAN, Chief Judge.
James and Jamie Costello (the Costel-los), and their daughter Sadonya Costello (Sadonya) (collectively, the plaintiffs), appeal from the district court’s grant of summary judgment in favor of Mitchell Public School District 79, the school board and superintendent of Mitchell Public Schools, the principal of Mitchell High School (Mitchell or the school), and a teacher at Mitchell (collectively, defendants). We affirm.
I.
In this appeal from the grant of a summary judgment motion, we recite the facts in the light most favorable to the plaintiffs. We begin with a brief note on terminology. According to the lexicon of special education services, an SAT is a student assistance team, which evaluates students, attempts to assist teachers in providing general education, and may refer a child to a multidisciplinary team (MDT) for further evaluation. An MDT is responsible for determining if a child has a verified disability under the regulations and for developing and implementing an individual education plan to ensure that child receives an appropriate education.
During her first four years at Morrill Elementary School in Morrill, Nebraska, Sadonya received special education services. By fifth grade, however, she was not verified as having a disability sufficient to qualify her for the provision of special education services under Nebraska’s regulations, see Neb.Admin.R. & Regs. tit. 92, ch. 51, § 006.04A. In May of 1994, for example, a report issued by her MDT indicated that Sadonya had no disability. In May of 1996, however, after Sadonya’s sixth-grade year, another MDT report concluded that Sadonya was disabled by an “other health impairment” and that she should have more testing. This determination, however, was not supported by a written report of a physician detailing her *919 current health status and its implications, a requirement under Nebraska law. See Neb.Admin.R. & Regs. tit. 92, ch. 51, § 006.0413a.
In the summer of 1996, the Costellos completed the appropriate paperwork to have Sadonya and her older brother attend Mitchell High School, where Sadonya accordingly matriculated for seventh grade during the 1996-1997 school year. Her educational records were transferred from Morrill to Mitchell.
At the beginning of the fall 1996 semester, principal Kent Halley, guidance counselor Joe Yauney, and special education teacher Carey Brown met to discuss Sa-donya’s medical records and concluded that she was not eligible for special education services because her disability had not been verified under Nebraska law. Brown testified that this was an SAT meeting. Sadonya was informally monitored, however, and during the first semester Mitchell’s staff saw no indication that Sadonya would need special education services. Both Halley and Brown observed that Sadonya’s grades were generally average, that she was very social, and that she seemed to be well accepted by her peers. Her grades dropped somewhat during the second quarter of that semester, however, and by the end she was failing band class.
Several weeks into the semester the Costellos became aware of the fact that Sadonya was not receiving special education services when Sadonya reported that she was not receiving occupational therapy. During the next few months, and particularly in the spring of 1997, many contacts occurred between the Costellos and Mitchell High School’s administrators and staff regarding Sadonya’s status. The Costellos signed a release so that Sadon-ya’s doctors could send information on her health to the school. The diagnoses and evaluations the school received, however, were outdated and did not explain Sadon-ya’s current status. For example, several letters stated that Sadonya had previously been diagnosed with epileptic seizures, attention deficit disorder, and unspecified learning disabilities, but did not give her current status and abilities. One report did indicate, however, that Sadonya was currently taking phenobarbitol.
At the end of her first semester at Mitchell, Sadonya was having difficulty with her band teacher, Roger Kercher. She testified in her deposition that he daily called her “retarded,” “stupid,” and “dumb,” in front of her classmates. In one instance, after belittling her in front of the class for a bad grade on an assignment in her notebook, he threw the notebook at her, hitting her in the face: During a basketball game in either late December or early January at which the band was playing, Sadonya came to her mother and explained that Kercher had just told her that she could no longer play in the band because she was too stupid and that he did not have to teach students like her and that he would not. Jamie Costello asked Kercher about it, who just laughed and said “yeah, something like that.”
Jamie Costello subsequently met with Halley, Yauney, Kercher, and Sadonya’s therapist about the problems with band, although Kercher became angry and left the meeting. During the meeting, Jamie Costello asked Sadonya’s therapist what she thought about Sadonya remaining in band class, and “she said if Mr. Kercher feels that way, [Sadonya’s] not going to gain anything by being in one of his classes.” Sadonya was then removed from band and placed in a required music appreciation class, which was also taught by Kercher. Sadonya completed the music appreciation class despite Kercher’s comments. Several other students and par *920 ents mentioned to Jamie Costello that Kercher had also been verbally, and occasionally physically, abusive toward other students in his classes.
Early in the second semester, principal Halley convened an SAT meeting with Sa-donya and various staff members, including Yauney and Sadonya’s social studies teacher, to discuss ways to improve Sadon-ya’s academic situation. Sadonya subsequently signed a contract with Mitchell that required her to ask for more help from teachers when she needed it. Sadon-ya’s grades continued to drop during the spring, however, and the Costellos were sent several notices in January, March, and May about her failing grades. Sadon-ya also was less social and had more absences than during the prior semester. Mitchell’s staff members sent letters on behalf of the school seeking additional information from various health professionals about Sadonya’s current impairments and contacted the Costellos about the need for more medical information. In the absence of such information, Sadonya’s case stalled and she received no formal special education services.
In May of 1997, Dr. Mark R. Scanlan, a psychiatrist, wrote a letter to Mitchell, concluding that if Sadonya “returns to school at this point her situation would only worsen, both physically and mentally.” Sadonya has been home-schooled since that time. She has suffered from depression and suicidal thoughts and receives counseling and treatment.
Sadonya and her parents filed suit in the district court, bringing three 42 U.S.C. § 1983 claims, two for violations of the Due Process and Equal Protection Clauses of the United States Constitution and one for violations of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1487, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and the Rehabilitation Act, 29 U.S.C. § 794. They also brought separate claims under the IDEA, ADA, and Rehabilitation Act and a state-law claim of intentional infliction of emotional distress. All claims were brought against Mitchell School District 79 and the Board of Education of Mitchell Public Schools, as well as against Kercher, Halley, and district superintendent Donald Wagner, individually and in their official capacities.
On November 22, 1999, the district court[2] granted partial summary judgment against the Costellos and Sadonya, holding that the individual defendants were entitled to qualified immunity and dismissing on the merits the intentional infliction of emotional distress claim. On September 14, 2000, the court[3] granted summary judgment in favor of the remaining defendants. The Costellos and Sadonya appeal.
II.
We review the district court’s grant of summary judgment de novo. Henerey v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir.1999). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; Fed.R.Civ.P. 56(c).
A. Due Process Clause
The Costellos and Sadonya argue that they have a liberty interest in Sadon- *921 ya’s education and that the school district’s acquiescence in Kercher’s harassment constituted a violation of substantive due process. They also allege a procedural due process violation, arguing that the defendants were required to provide special education services to Sadonya.
Assuming the existence of a protected liberty interest, we turn first to the procedural due process issue. The record shows that Sadonya’s disability was not verified. Her records at Morrill Elementary show her as a student with a disability consisting of an “other health impairment,” but they lack the required written report detailing her current health status. See Neb.Admin.R. & Regs. tit. 92, ch. 51, § 006.0413a. Accordingly, Mitchell informed the Costellos that more information was needed. Mitchell subsequently followed appropriate procedures to determine Sadonya’s entitlement to special educational services. An SAT monitored Sadonya, considered all facets of her adjustment to Mitchell, and concluded independently that she did not qualify for special education services. Accordingly, we conclude that the plaintiffs have failed to create a genuine issue of material fact on a procedural due process violation.
We also conclude that the plaintiffs’ substantive due process claim, based on Kercher’s verbal harassment of Sadonya, fails. To establish a substantive due process claim, the plaintiffs must show that the “government’s actions either shock the conscience or offend judicial notions of fairness or human dignity.” Young v. City of St. Charles, 244 F.3d 623, 628 (8th Cir.2001) (internal quotation marks omitted). Although Kercher’s behavior, as alleged by the plaintiffs, strikes us as being singularly unprofessional, we conclude that the plaintiffs have not raised a genuine issue of material fact on whether his behavior was sufficiently shocking to the conscience to state a substantive due process claim. See Collins v. City of Harker Heights, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); cf. Abeyta v. Chama Valley Indep. Sch. Dist., 77 F.3d 1253, 1258 (10th Cir.1996) (teacher repeatedly calling student a prostitute and turning a deaf ear while her classmates did so held not to constitute a substantive due process violation).
B. Equal Protection
Plaintiffs acknowledge that a disability like retardation is “not ‘a quasi-suspect classification calling for a more exacting standard of judicial review than is normally accorded economic and social legislation.’ ” Heidemann v. Rother, 84 F.3d 1021, 1031 (8th Cir.1996) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 442, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). A plaintiff may bring an equal protection claim as a “class of one” where she alleges “that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.” Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam).
The plaintiffs argue that Sadonya’s removal from band class violated her equal protection rights. We conclude that the plaintiffs have not raised a genuine issue of material fact on whether removing Sadon-ya from the band was rationally related to a legitimate governmental purpose — namely, providing Sadonya with a public education that is conducive to learning. Although removal from band may not have been the only option available to Mitchell, we conclude that there is no issue of material fact about whether this determination was rationally related to a legitimate governmental purpose. See Heidemann, 84 F.3d at 1031 (finding no equal protection *922 violation where restraint technique was not “beyond the scope of professionally acceptable choices”).
C. The IDEA
The IDEA was intended to ensure that children with disabilities receive an education that is both appropriate and free. Florence Cty. Sch. Dist. 4 v. Carter, 510 U.S. 7, 13, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993); 20 U.S.C. § 1400(d)(1)(A). Under the IDEA, a child with a disability is defined as having one of certain enumerated conditions, which includes “other health impairments.” 20 U.S.C. § 1401 (3)(A)(i). Under Nebraska law, a diagnosis of “other health impairment” must include the analysis and documentation of such an impairment in a “signed, written report from a physician which describes the current health status and gives any medical implications of the impairment.” Neb.Admin.R. & Regs. tit. 92, ch. 51, § 006.0413a. The parents of a child who has a disability within the meaning of the IDEA are entitled to written prior notice whenever the local educational agency proposes or refuses to initiate or change “the identification, evaluation, or educational placement of the child.” 20 U.S.C. § 1415(b)(3).
In granting summary judgment in favor of the defendants on the IDEA claim, the district court found that the Costellos and Sadonya had failed to raise a genuine issue of material fact on whether Sadonya had a verified disability. The plaintiffs argue that Mitchell violated the IDEA because Sadonya did not receive special education services despite a verified disability and because they did not receive proper notice that Sadonya’s services would be discontinued when she entered Mitchell.
Although Morrill Elementary treated Sadonya as having a verified “other health impairment,” her records from that school lacked the necessary physician’s report on Sadonya’s current health impairments. Mitchell was required under the appropriate regulations to determine if Sadonya was qualified for special education services at her current level of functioning, not her past levels. See Neb.Admin.R. & Regs, tit 92, ch 51, § 006.0413 (1992). Accordingly, Mitchell properly did not consider Sadonya as a child .with a disability within the meaning of the IDEA.
Turning to the procedural issue, the IDEA requires parental notice whenever an educational “agency proposes to initiate or change or refuses to initiate or change the identification, evaluation, or educational placement of the child.” 20 U.S.C. § 1415(b)(3). The IDEA does not refer to “verified” disabilities. That term occurs only in Nebraska’s administrative code.[4] The IDEA contemplates that the parents of a child in any stage of the verification process receive prior written notice of all initiations or refusals of action by the agency. Mitchell identified and evaluated Sadonya, but it refused to institute an educational placement that included special education services. This is a refusal within the meaning of the IDEA. Thus, Sadon-ya’s parents should have received the written notice required by § 1415(c), which details the specific information an educational agency must include in the notice.
Not all procedural errors result in a loss of educational opportunity. See J.D. v. Pawlet Sch. Dist., 224 F.3d 60, 69 (2d Cir.2000); Heather S. v. Wisconsin, 125 F.3d 1045, 1059 (7th Cir.1997) (quoting W.G. v. Bd. of Trustees, 960 F.2d 1479, 1483 (9th Cir.1992)). Despite the failure to provide the notice required by § 1415. *923 Mitchell requested, both orally and in writing, a current medical report. In response to these requests, the plaintiffs provided only outdated diagnoses that did not describe any current health impairment. In light of their failure to provide information that might well have helped Mitchell in its continuing efforts to evaluate Sadonya’s condition, the plaintiffs will not now be heard to complain of Mitchell’s failure to comply literally with the terms of the relevant statutes. Accordingly, we conclude that the court properly granted summary judgment to the defendants on the IDEA claim.
D. The ADA and Rehabilitation Act
The plaintiffs argue that Sadonya was disabled within the meaning of the ADA because she has a disability, was regarded as disabled, or has a record of disability, and that the defendants therefore violated the ADA and Rehabilitation Act by denying her the benefits of participating in band class. See 42 U.S.C. § 12132 (“no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the sendees, programs, or activities of a public entity, or be subjected to discrimination by any such entity”); see also 29 U.S.C. § 794(a).[5]
Under the ADA, disability is defined as: “(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.” 42 U.S.C. § 12102(2). “[W]hether a person has a disability under the ADA is an individualized inquiry.” Sutton v. United Air Lines, Inc., 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). An impairment is “substantially limiting” if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. 29 C.F.R. § 1630.2(j)(l)(i)-(ii) (2001). Major life activities include learning. 29 C.F.R. § 1630.2(i) (2001).
Sadonya and her parents point to her past impairment diagnoses to support a claim of actual disability. They present no evidence, however, of a physical or mental impairment that substantially limits Sa-donya in the life activity of learning. The evidence demonstrates that it is more difficult for her to learn than for her peers, but that this limitation has not prevented Sa-donya from advancing to the next grade each year or from currently working toward her G.E.D. The evidence points to the conclusion that whatever Sadonya’s impairments may be, they are only moderately limiting. Indeed, in the beginning of seventh grade, before band class became intolerable, Sadonya’s grades were average, and later in the year, educational professionals still believed that Sadonya would be able to keep up with her class so long as she asked for and received some additional help. The plaintiffs have therefore not shown that Sadonya’s impairment causes a substantial limitation when compared to the general population. See Cody v. CIGNA Healthcare of St. Louis, Inc., 139 F.3d 595, 598 (8th Cir.1998) (difficulties in life that do not hinder performance of required tasks not substantial limitation); Weber v. Strippit, Inc., 186 F.3d *924 907, 914 (8th Cir.1999) (describing moderate limitation as insufficient), cert. denied, 528 U.S. 1078, 120 S.Ct. 794, 145 L.Ed.2d 670 (2000). Accordingly, Sadonya has not shown that she is actually disabled within the meaning of the ADA.
We turn then to the plaintiffs’ assertions that Sadonya was regarded as disabled by the defendants. To be regarded as disabled under the ADA, an individual must show that she has an impairment that “does not substantially limit major life activities but is treated by a covered entity as constituting such limitation.” 29 C.F.R. § 1630.2(Z)(1); see Cody v. CIGNA Healthcare, Inc., 139 F.3d 595, 598-99 (8th Cir.1998). The evidence shows that the defendants treated Sadonya as if she was student without a substantially limiting impairment. Indeed, the main thrust of the plaintiffs IDEA claims is that Mitchell did not treat Sadonya as disabled when it should have. Kercher’s name-calling alone is insufficient to raise a genuine issue of material fact on the matter.
Finally, we address plaintiffs’ contention that Sadonya had a record of disability. To establish the existence of a record of a disability, an individual must show that she “has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.” 29 C.F.R. § 1630.2(k). As previously mentioned, Sadonya’s records do not show a substantially limiting impairment, and thus she has not raised a genuine issue of fact on her claim that she has a record of a disability.
We conclude that there exists no genuine issue of material fact on the issue of whether Sadonya was disabled within the meaning of the ADA and Rehabilitation Act, and summary judgment was therefore properly granted in favor of all defendants on this claim.
E. Intentional Infliction of Emotional Distress
With regard to the intentional infliction of emotional distress claim, the district court concluded that the Costellos and Sadonya had failed to present a genuine issue of material fact under Nebraska law on whether Kercher’s actions were so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.
To constitute intentional infliction of emotional distress, a plaintiff must show
(1) [t]hat there has been intentional or reckless conduct; (2)[t]hat the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community; and (3)[t]hat the conduct caused emotional distress so severe that no reasonable person should be expected to endure it.
Gall v. Great W. Sugar Co., 219 Neb. 354, 363 N.W.2d 373, 377 (1985). Assuming that the plaintiffs have raised a genuine issue of material fact on the first and third parts of the test, we agree with the district court that Kercher’s words and conduct, however unprofessional, intemperate, and unworthy of one entrusted with the responsibility of educating students, did not rise to the level that would satisfy part two of the test set forth in Gall. Accordingly, the district court did not err in granting summary judgment in favor of all defendants on the merits of this claim.
The judgment in affirmed.

. The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

. The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

. Section .006.04A states: “School districts, county superintendents, or approved cooperatives shall provide special education services only to children with verified disabilities.”

. The parties argue both claims primarily under the ADA standards, so for the purposes of this appeal, we do likewise. See Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir.1998) (ADA similar to Rehabilitation Act so that cases interpreting either are applicable and interchangeable).