John E. LOVE, Plaintiff,

v.

DUKE UNIVERSITY, Defendant.

No. 1:90CV00517.

United States District Court,
M.D. North Carolina,
Durham Division.

Sept. 27, 1991.

Jones & Avery by Robert James Willis, Raleigh, N.C., for plaintiff.

Fulbright & Jaworski by Carl W. Vogt, Karen M. Moran, and John M. Simpson, Washington, D.C., for defendant.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

This matter is before the court upon defendant Duke University's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties have fully briefed their positions, and the matter is now ready for a ruling. The court grants the defendant's motion as to 42 U.S.C. § 2000d *et seq.* (1988); 42 U.S.C.

§ 1981; and for breach of contract under state law.

## Facts

Plaintiff John E. Love, a hispanic male, alleged that defendant Duke University terminated him from the Biochemistry Ph.D. Program because of his race. Additionally, Love alleged that the University breached a contractual agreement in violation of North Carolina state common law.

Love was first accepted into the Duke Department of Biochemistry Ph.D. Program as a full-time student in the fall semester of 1983. Love completed his first semester requirements satisfactorily. However, in his second semester, Love received grades of incomplete in five courses. Of these five incompletes, two of the grades were converted into failures. Because of these failures, Love was terminated from the Ph.D. program in 1984.

When Love was accepted into the program in 1983, the University imposed a deadline by which Ph.D. candidates were to complete a preliminary examination. In 1983, this deadline was four semesters. This requirement was also printed in the University Bulletin for the Graduate School. In 1986 this requirement was reduced to three semesters. This requirement was printed in the 1986 University Bulletin.

The preliminary examination is an oral test given by a Ph.D. student's advisory committee. The examination assesses the student's general knowledge as well as the subject of the student's proposed thesis project.

Love was readmitted into the Ph.D. program in 1986. Upon readmittance, he had already completed at least one year of course work toward his Ph.D. and had been registered for two semesters in residence as a full-time graduate student. Based on his standing at the time of readmittance, and on the new preliminary examination requirement, Love was required to take and pass his preliminary examination by the beginning of the 1987 spring semester.

During the fall of 1986, Love submitted a pre-preliminary proposal to a faculty committee. This proposal was rejected. The committee felt that all of the scientific research in Love's chosen field had already been done. However, in an effort to assist Love in finding an appropriate topic, Love was excused from all laboratory research. Additionally, Love was given formal notice that his preliminary proposal was due in December 1986.

In March 1987, Love had not submitted a pre-preliminary proposal or taken his preliminary examination. Consequently, Love was given a second formal notice. This notice informed Love that if he did not complete his preliminary examination by the end of the spring semester in May 1987, he would be terminated from the program.

At the end of the spring semester, Love had not submitted the pre-preliminary proposal to a faculty committee. On August 27, 1987, the department voted to terminate Love from the program.

On August 24, 1990, Love brought a state court action in Durham County Superior Court. On October 9, 1990, defendant Duke University removed this action to federal court.

Love's complaint asserted three claims against Duke University. First, Love asserted that Duke University violated Title VI of the Civil Rights Act of 1964, 41 U.S.C. § 2000d *et seq.* (1988). Second, Love asserted that Duke University violated 42 U.S.C. § 1981 (1988). Finally, Love asserted that Duke University breached its contract with Love under state law.

In response, defendant Duke University moved for summary judgment on all three issues. Duke argued that summary judgment must be granted as a matter of law because Love cannot establish a prima facie case of discrimination as required by Title VI. Similarly, Love cannot establish a prima facie case for § 1981 as set out in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Finally defendant Duke University argues that the University Bulletin upon which Love bases his state law contract claim does not constitute a valid contract

upon which a claim of breach can be supported.

### Discussion of Law

#### Summary Judgment

The material facts in this case are not in dispute. "[S]ummary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inference to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

■ Plaintiff Love argues that summary judgment should not ordinarily be granted before discovery is complete, particularly when constitutional or civil rights claims are at issue. However, the November 3, 1990 pre-trial order established six months for discovery. Since that time has now expired, plaintiff Love has failed to bring forth any information to establish a dispute concerning the facts in this case. Accordingly, summary judgment is appropriate on all three issues in this case.

#### Title VI

*Title VI*, codified as 42 U.S.C. § 2000d provides:

No person in the United States shall, on the ground of race, color or national origin, be excluded participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

■ In order to make out a prima facie case of discrimination under Title VI, it is necessary to analyze the proof elements of Title VII. *See, e.g., Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987); *Guardians Assoc. v. Civil Serv. Comm. of City of N.Y.*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), Marshall, J. dissenting. However, it appears that a majority of the Court believe that Title VI requires a showing of intentional discrimination as a prerequisite to an award of any sort of "compensatory damages" to a private litigant in a Title VI case. *Eastman v. Virgi-*nia Polytechnic Inst. and State Univ., 939 F.2d 204 (4th Cir.1991) quoting *Guardians Assoc. v. Civil Serv. Comm. of City of N.Y.*, 463 U.S. at 607 n. 27, 103 S.Ct. at 3235 n. 27.

■ Applying this analysis to plaintiff Love, this court finds that Love cannot make out a Title VII claim. Similarly, Love cannot meet the prerequisite for a damage award necessary under Title VI since this court finds no intentional discrimination by Duke University.

Under Title VII, a discharged plaintiff must show that: (1) the plaintiff is a member of a class entitled to protection under the Civil Rights Act; (2) the plaintiff was discharged without valid cause; and (3) the plaintiff's position was filled by a person outside the protected group. *Sumler v. City of Winston–Salem*, 448 F.Supp. 519, 527 (M.D.N.C.1978).

Applying the Title VII prima facie case to Love, he is unable to meet the requirements. Love cannot establish as a matter of law, that defendant Duke University's actions in his dismissal from the Ph.D. program were intentional and without valid cause. Hence, Love cannot establish the second prong of the Title VII requirements.

The facts are undisputed that Love received two failing grades in 1984. Love, however, does not base his claim on his first termination from the program, but on his termination after readmittance.

An analysis of the facts after Love's readmittance are also undisputed. When Love was readmitted to the Biochemistry Ph.D. Program *all* students were required to take their preliminary examinations by the end of their third semester in residence. Since Love was a second-year student upon readmittance by his own admission, under the Department's policies, he should have completed his preliminary examination by January 1987.

By the end of the summer of 1987, Love had not even submitted an acceptable pre-preliminary proposal. Accordingly, when Love was unable to meet this deadline he was terminated in adherence to program guidelines.

Next, Love claims that his termination was the action of a discriminatory motive and was merely pretextual. This court finds this argument without merit based on the evidence adduced in discovery.

Love claims that at least one white female student was given more than two years in which to complete her preliminary examination. In order for this claim to be valid, Love must show that the white female student and he were similarly situated. *See, LaMontagne v. American Convenience Prods. Inc.,* 750 F.2d 1405, 1415 (7th Cir.1984). Additionally, Love must show that the white female was given preferential treatment by the department. The facts show that Love cannot meet this burden.

First, the white female student was admitted into the program in 1983. At that time, the deadline for taking the preliminary examination was four semesters. When Love was readmitted in 1986, the deadline for the preliminary examination was three semesters. Both Love and the white female received a one-semester extension on their applicable deadlines.

Additionally, the white female was only given an extension when she changed laboratories. Love was also given a similar option, but refused to exercise the option. Accordingly, Love cannot show that his termination was pretextual based on the department's actions as they related to the white female student.

Finally, the court is of the opinion that the initial responsibility for determining competence and suitability of persons to engage in professional careers lies with the professional schools themselves. Great deference should be given to the professional school concerning decisions they make about enrollment, course requirements, and termination. The court has neither the insight nor the expertise to make decisions concerning student termination, absent proof of intentional discrimination.

█ The court is mindful of the standards set out in *North v. West Virginia Bd. of Regents,* 175 W.Va. 179, 332 S.E.2d 141 (1985), *cert. denied,* 475 U.S. 1020, 106

S.Ct. 1207, 89 L.Ed.2d 320 (1985). "So long as conduct of educators is not high-handed, arbitrary or capricious, educators should be left alone to do their job without interference from the judiciary ..." *Id.* 332 S.E.2d at 144. We find no evidence of arbitrary or capricious behavior by defendant Duke University in the termination of Love. Hence, academic autonomy should not be interfered with in this case.

Since Love was terminated from the Biochemistry Ph.D. Program for academic reasons, his Title VI claim cannot survive. Love has presented no evidence that the actions of Duke University were racially motivated or pretextual. Accordingly, summary judgment is appropriate on this issue.

## 42 U.S.C. § 1981

Plaintiff Love claims that defendant Duke University violated his right to make and enforce contracts. Accordingly, Love filed a 42 U.S.C. § 1981 claim against Duke. The basis of this claim is that Duke did not give Love notice of the departmental grievance procedures. Hence, Love claims that Duke refused to allow him the same right to enforce his contract with Duke in the same manner as white graduate students in the Biochemistry Department.

Additionally Love claims that the contract between plaintiff and Duke upon his readmittance gave him three, full, academic years to complete his preliminary examination requirement. Love alleges that the words in the bulletin are binding and that his first year and summer school time should not be considered in this computation.

Title 42, United States Code, Section 1981 states in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." In order to assert a § 1981 claim, there must first be a contract.

Love claims that Duke's bulletin was a binding contract between plaintiff and Duke. In other words, Love wants the court to find that the three-year prelimi-

nary examination requirement should be measured from his date of readmittance. This would mean that Love had until spring 1989 to complete this requirement. Yet, Love by his own admission, states that upon his readmittance in 1986, he was a second-year student.

Plaintiff Love wants the benefit of three academic years to complete his examination, on top of his 1983–84 enrollment. The University Bulletin states that a full-time student must take his preliminary examination by the end of his third academic year, no later than the end of the spring semester. Love failed to adhere, hence the termination was not in violation of § 1981.

Additionally, Love has not submitted any proof that white students were afforded a judicial hearing or that he requested such a hearing. Furthermore, Love does not deny that he had access to the bulletin or that he was aware of its contents at termination. Since academic dismissals are wholly discretionary, great deference must be given to these decisions.

The court is of the opinion that no contract existed between Love and Duke University. Particularly, the academic bulletin is not a binding contract. However, even if there was a contract, the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), will not support Love's § 1981 claim. Similarly, the United States Court of Appeals for the Fourth Circuit held that allegations of discriminatory discharge are not actionable under § 1981. *Williams v. First Union Nat'l Bank of North Carolina*, 920 F.2d 232, 234 (4th Cir.1990).

Under *Patterson*, a defendant must obstruct a plaintiff's rights to enforce a contract. Love has not demonstrated that Duke obstructed him from pursuing any judicial or nonjudicial methods of contract enforcement. Accordingly, defendant's motion for summary judgment on the § 1981 claim is granted.

The State Law Contract Claim

As previously stated, this court finds that a binding contract did not exist between plaintiff Love and defendant Duke University. This finding is based on Love's claim that the University Bulletin created a binding contract between Love and the university.

Love claims that the university breached an alleged contract in the following ways: (1) Duke denied Love the opportunity to take the preliminary examination at the end of Love's third year of studies; (2) Duke terminated Love without informing him of his rights to invoke the "Judicial Code & Procedures" set out in the University Bulletin; and (3) Duke did not provide Love with notice or a hearing as required by the "Judicial Code & Procedures" before terminating him.

The court finds each of these claims without merit for the reasons previously stated. Since the court finds that the University Bulletin was not a binding contract between Love and defendant Duke, the defendant's motion for summary judgment on the state law contract claim is granted.

### Conclusion

In light of the foregoing, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the defendant's motion for summary judgment is GRANTED on plaintiff's Title VI, and § 1981 claims, and on the state law contract claim.