Byron **BRANTLEY, a Minor, By and Through Denise Brantley, His Parent and Guardian, and Denis Brantley, Plaintiffs,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 625, ST. PAUL PUBLIC SCHOOLS, Defendant.**

No. 3–95 CIV 674.

United States District Court,
D. Minnesota,
Third Division.

Aug. 13, 1996.

Sonja D. Kerr, Inver Grove Heights, MN, for Plaintiff.

Rider, Bennett, Egan & Arundel, LLP by Karen A. Janisch, Minneapolis, MN, for Defendant.

## ORDER

ALSOP, Senior District Judge.

This matter comes before the Court on cross-motions for summary judgment. Defendant moves for involuntary dismissal pursuant to Fed.R.Civ.P. 41(b)[1] and summary judgment on all but one of Plaintiffs' claims. Plaintiffs move for partial summary judgment seeking reimbursement for expenses incurred when Ms. Brantley unilaterally placed her son in a private school. Because

there are genuine issues of material fact, Plaintiffs' motion will be denied and, pending submission of additional evidence, if any, Plaintiffs' claim pursuant to the IDEA will be decided on the administrative record. Defendant's motion will be granted in part and denied in part.

## I. BACKGROUND

### A. Facts and Procedural History

Byron Brantley is a sixteen year-old, part African–American and part Native–American student. Prior to fourth grade, Byron was enrolled in the Kansas City, Missouri school district. Byron's family moved to Minnesota for his 4th grade school year (1990–91) and he was enrolled in Dayton's Bluff Elementary School in the St. Paul School District (the "District"). Byron did not receive any special education services during this year.[2]

In 5th grade (1991–92) and 6th grade (1992–93), Byron attended another District school, Museum Magnet, because his family had moved. He received special education services at the end of his fifth grade year and during his sixth grade year pursuant to an Individual Education Plan ("IEP") developed by the District in May, 1992. Byron had disciplinary problems during his sixth grade year and was suspended for numerous days, the number of which remains in dispute by the parties. Ms. Brantley, Byron's mother and a named plaintiff in this action, alleges certain incidents surrounding these alleged suspensions were racially motivated.

In the spring of 1993, Byron's IEP team developed a new annual IEP for Byron. However, because the Museum Magnet School only provides education for children through the sixth grade, Byron was required to enroll in a new school. Ms. Brantley requested that he be enrolled at Benjamin Mays Junior High School ("Benjamin Mays") but admission was denied. The District claims that Byron was denied enrollment at Benjamin Mays because his application was

---

1. The Court dealt with the motion for involuntary dismissal at the July 25, 1996 hearing and, accordingly, it is not addressed in the present Order.

2. Plaintiff did, however, receive supportive academic services in reading and math as part of a non-special education Chapter I program.

filed after the April 3, 1993 deadline and because of racial quotas required by the District's state approved desegregation plan. The District's enrollment committee instead determined that Byron could enroll at Capitol Hill School ("Capitol Hill"), which is a "gifted and talented" school for grades K–8. Byron attended Capitol Hill for the first semester of his 7th grade education (Fall 1993) and received special education services during this semester. Byron was then transferred to Highland Middle School for the second semester of his 7th grade education (Spring 1994). In January and February, 1994, a revised IEP was developed which provided Byron with 750 minutes of direct special education services and 25 minutes per week of services from the school social worker.

On June 10, 1994, Ms. Brantley requested a special education due process hearing pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1415 ("IDEA"), claiming Byron had been and was presently being denied a free appropriate public education ("FAPE") as guaranteed by the IDEA. A due process hearing was held over nine non-consecutive days after being extended over Plaintiffs' objection.[3] Plaintiffs requested interim relief from the Hearing Officer ("HO"), but were denied such relief. Instead, the HO determined that Byron's "stay put" program was at Highland Junior High School pursuant to 20 U.S.C. § 1415(e)(3).

Unhappy with the stay put program for Byron, Ms. Brantley arranged for him to attend St. Bernard's Catholic High School for his 8th grade year (1994–95). Ms. Brantley then requested that the HO determine whether she was entitled to reimbursement of tuition, private tutoring costs, and transportation costs related to Byron's attendance at St. Bernard's (hereinafter "St. Bernard's related costs"). On December 2, 1994, the HO issued her decision finding that the District had denied Byron FAPE since the end of his fifth grade year (Spring 1992) and awarded compensatory education.[4] On February 28, 1995, the HO issued a supplemental decision granting the request for reimbursement of St. Bernard's related costs.

The District submitted a notice of appeal on March 30, 1995. The Hearing Review Officer ("HRO") concluded that Byron had been denied FAPE and awarded two years of compensatory education but reversed the HO's supplemental decision that Plaintiffs were entitled to reimbursement for St. Bernard's related costs.

### B. *The Present Lawsuit*

Plaintiffs filed the present suit in federal district court on July 21, 1995 seeking recovery on four different grounds. First, Plaintiffs seek review of the HO and HRO decisions pursuant to the IDEA. Plaintiffs claim Byron was denied FAPE for five years [5] and seek the following as damages: (a) general and punitive damages for the failure to provide Plaintiff with FAPE; (b) compensatory education in the form of money equal to four years' education at St. Bernard's [6]; (c) a future placement at St. Bernard's or a similar institution as part of Byron's regular education; and (d) reimbursement for the 1994–95 school year when Byron actually attended St. Bernard's. Second, Plaintiffs claim the District discriminated against Byron on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., Section

---

3. Byron's initial due process hearing was held on the following days: July 26–29, August 17–19, 22 and 29, 1994.

4. Plaintiffs also claim the HO ordered Byron to remain at St. Bernard's for the remainder of the 1994–95 school year. However, the language used by the HO is not as strong as Plaintiffs suggest. In a memorandum following her decision, the HO merely stated that, in her opinion, it would be appropriate for Byron to remain at St. Bernard's for the 1994–95 school year.

5. Plaintiffs claim Byron was denied FAPE for the following school years: 1990–91; 1991–92; 1992–93; 1993–94; 1994–95. During the 1994–95 school year, Byron was enrolled at St. Bernard's.

6. This represents the 1990–91, 1991–92, 1992–93, and 1993–94 school years in which it is alleged Byron was denied FAPE while he was still enrolled in District Schools. As will be discussed infra, this claim also encompasses a request for judicially ordered placement at St. Bernard's or a similar institution.

504 of the 1973 Rehabilitation Act, 29 U.S.C. § 794, and the Minnesota Human Rights Act ("MHRA"), Minn.Stat. § 363.03. Third, Plaintiffs claim the District discriminated against Byron on the basis of his race in violation of Title VI of the Civil Rights Act of 1964 and the MHRA Minn.Stat. § 363.03, by subjecting him to a racially hostile environment and by failing to admit him to Benjamin Mays Junior High School for the 1993–94 school year. Finally, Plaintiffs claim the District violated 42 U.S.C. § 1983 by denying Byron his right to a timely due process decision secured by federal law.

Both parties agree that Plaintiffs' IDEA claims are properly resolved by a future motion for decision based on the administrative record. The Court will receive additional evidence to supplement the administrative record provided the submitting party establishes a "solid justification" for such evidence. *Independent School District No. 283 v. S.D.*, 88 F.3d 556 (8th Cir.1996). However, the parties also agree that the Court may determine, as a matter of law, whether damages are available pursuant to the IDEA for compensatory education in the form of money to place a child at a private school and whether general or punitive damages are available under the IDEA.[7] Plaintiffs have demanded a jury trial on all remaining non-IDEA claims. The Court must determine whether these remaining claims are viable in light of the IDEA and whether there are genuine issues of material fact for trial.

## II. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment is appropriate when no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). It should be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hegg v. United States*, 817 F.2d 1328, 1331 (8th Cir.1987). Summary judgment is prop-

er, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The test for whether there is a genuine issue of material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512; *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir.1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Second, any dispute of material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. It is the non-moving party's burden to demonstrate that there is evidence to support each essential element of his or her claim.

### B. *IDEA Claims*

Plaintiffs seek four forms of relief pursuant to the IDEA. First, Plaintiffs seek general and punitive damages for the failure to provide Plaintiff with FAPE. Second, Plaintiffs seek compensatory education for a period of four years in the form of money equal to the cost of four years' education at St. Bernard's. Third, Plaintiffs seek a future placement at St. Bernard's or a similar institution as part of Byron's regular education pursuant to his IEP. Fourth, Plaintiffs seek reimbursement for St. Bernard's related costs for the 1994–95 school year when Byron actually attended St. Bernard's. The IDEA provides that, in any action brought pursuant to 20 U.S.C. § 1415(e)(2), the court "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). The United States Supreme Court and the Eighth Circuit have provided

---

**7.** Both parties concede tuition reimbursement is a viable remedy under the IDEA provided the public school placement violated the IDEA and placement at St. Bernard's was proper under the Act. *Independent School District No. 283 v. S.D.*, 88 F.3d at 560–61.

some guidance as to what relief is appropriate under the IDEA. Guided by this case law and the policy behind the IDEA, the Court makes the following determinations as to which relief requested by Plaintiffs is "appropriate" under the IDEA.

### 1. *General and Punitive Damages*

■ At the hearing held on July 25, 1996, Plaintiffs' counsel stated that Plaintiffs seek general damages under the IDEA.[8] The exact nature of these alleged general damages remains unclear. However, *Heidemann v. Rother*, 84 F.3d 1021 (8th Cir.1996) makes clear that general or punitive damages are not available for violations of the IDEA as a matter of law. Accordingly, Plaintiffs' claim for general damages pursuant to the IDEA will be dismissed.

### 2. *Compensatory Education*

■ Plaintiffs seek compensatory education for the denial of FAPE for the years 1990–91, 1991–92, 1992–93, and 1993–94. Byron attended District schools during this period and thus Plaintiffs do not seek actual reimbursement for costs associated with a unilateral placement of Byron in a private school for those years. Further, Plaintiffs do not seek compensatory education services from the District to remedy the denial of FAPE for these four school years. Instead, Plaintiffs seek compensatory education in the form of four years of school at St. Bernard's or a similar institution. It is not clear whether this should come in the form of a judgment ordering such provision or a judgment awarding money damages for the monetary equivalent as a remedy for the past denial of FAPE.[9] Although this issue can only be completely resolved based on the administrative record, this claim can be clari-

fied based on the type of relief that is unavailable under the IDEA as a matter of law.

At the July 25, 1996 hearing, Plaintiffs' counsel represented that Plaintiffs seek monetary damages for relief from past deprivation of educational services. To the extent Plaintiffs seek such monetary damages, Plaintiffs claim for past deprivation of educational services will be denied as a matter of law.

In *Miener v. State of Missouri*, 673 F.2d 969 (8th Cir.), cert. denied, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982) (*"Miener I"*) the Eighth Circuit held that damages are not appropriate relief under the Education for All Handicapped Children Act ("EAHCA"), 20 U.S.C. § 1415(e)(2).[10] The parent brought suit requesting, inter alia, damages for violation of the student's statutory right to a full and adequate education. The court reasoned that the Act empowers the district court to grant "such relief as the court determines is appropriate" and thus the relevant question is whether damages are within the relief foreseen by Congress. Agreeing with the Seventh Circuit in *Anderson v. Thompson*, 658 F.2d 1205 (7th Cir.1981) that the legislative history indicates that a damages remedy was not intended by Congress, the court denied plaintiff's monetary damages claim for the denial of a full and adequate education pursuant to the EAHCA.

Subsequently, after the remand in *Miener I* to the district court, plaintiff challenged, inter alia, the earlier appeal insofar as it denied her claim for compensatory educational services. *Miener v. State of Missouri*, 800 F.2d 749 (8th Cir.1986) (*"Miener II"*). She argued in this second appeal that compensatory educational services are not "damages" pursuant to the Supreme Court's supervening decision in *Burlington School Committee v. Department of Education*, 471 U.S. 359,

---

**8.** Although the Complaint does not make this request clear, the Court will nonetheless address the propriety of general damages under the IDEA. Plaintiffs conceded at the hearing that punitive damages are not available and agrees that any claim for punitive damages pursuant to the IDEA may be dismissed.

**9.** The Court assumes for purposes of this motion that Byron was denied FAPE for these four years.

However, were these damages authorized by the IDEA, the extent to which Byron was denied FAPE, if at all, would be decided on the administrative record.

**10.** The Education for All Handicapped Children Act is one of the predecessor statutes of the present IDEA. Both statutes contain identical damages provisions.

105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)[11] and therefore are recoverable under the Education of the Handicapped Act ("EHA"), 20 U.S.C. § 1401 et seq.[12] In *Miener II,* the Eighth Circuit held that ordering compensatory educational services is appropriate relief under the IDEA for the denial of FAPE because the court believed such relief necessary to secure the child's right to FAPE. Finding support in *Burlington,* the court reasoned that, like the retroactive reimbursement imposed on the school district in *Burlington,* "imposing liability for compensatory educational services on the defendants 'merely requires [them] to belatedly pay expenses that [they] should have paid all along.'" *Miener II,* 800 F.2d at 753 (*citing Burlington,* 471 U.S. at 370–72, 105 S.Ct. at 2003.)

The Court finds Plaintiffs' claim for monetary relief to compensate Byron for his past deprivation of FAPE inappropriate under the IDEA because such relief would be "damages" as defined in *Miener I,* and not simply reimbursement or compensatory educational services as provided for in *Burlington* and *Miener II.* The IDEA does not provide for "damages" per se for a denial of FAPE and the overriding purpose and legislative history of the IDEA indicate that Congress did not intend money damages to be "appropriate relief." Accordingly, insofar as Plaintiffs' claim seeks damages for past deprivation of FAPE, Plaintiffs' claim will be dismissed.

Plaintiffs also seek a future placement for Byron at St. Bernard's or a similar institution as a remedy for the past denial of FAPE. Although the distinction between money damages in the amount of four years' tuition and related expenses at St. Bernard's, and a judicially mandated placement at St. Bernard's for which the District is financially responsible may seem artificial, it is crucial to the possibility of obtaining the latter as a form of relief.

As previously discussed, compensatory educational services is a remedy available under the IDEA pursuant to *Miener II.* The Supreme Court has also held that reimbursement for private school tuition and related costs is appropriate provided the IEP calling for placement in a public school was inappropriate and the private placement by the parents was proper under the IDEA. *Burlington,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The *Burlington* court further pointed out that "[t]he Act contemplates that such education will be provided where possible in regular public schools, ... but the Act also provides for placement in private schools at public expense where this is not possible." *Burlington,* 471 U.S. at 370, 105 S.Ct. at 2002 (*citing* § 1412(5); 34 C.F.R. §§ 300.132, 300.227, 300.307(b), 300.347 (1984)).[13] It is only logical that, to the extent compensatory educational services are available as a remedy, compensatory education in the form of placement in a private school at public expense is appropriate relief where it is demonstrated that FAPE is not possible in public schools. In order to receive such relief, Plaintiffs must demonstrate that FAPE is not possible in public schools and that the desired placement for compensatory educational services is appropriate under the IDEA. It is further noted that the possibility of FAPE in the District must be more than theoretical. Excessive delay in Byron's placement or repeated improper placements may demonstrate that FAPE is not possible and that a private school placement may be appropriate. Accordingly, the Court reserves judgment on whether Plaintiffs may receive, as "appropriate relief" under the IDEA claim, compensatory education in the form of placement at St. Bernard's or a similar private institution at public expense.

3. *Future Placement at St. Bernard's*

Plaintiffs also seek the placement of Byron at St. Bernard's or a similar institution as part of his regular education pursuant to his

---

11. The *Burlington* court held that reimbursement for expenses when a parent unilaterally places his or her child in a private school is appropriate relief under the IDEA provided the IEP calling for placement in a public school was inappropriate and the private school placement was appropriate under the IDEA.

12. The EHA is the successor statute to the EAHCA and the predecessor to the IDEA. For purposes of this lawsuit, the statutes are identical.

13. Presently, these provisions appear at 34 C.F.R. §§ 300.140, 300.348, 300.400–.402 (1996).

IEP as opposed to compensatory education for past deprivation of FAPE. For the same reasons as the Court reserves judgment on the issue of whether placement at St. Bernard's can be ordered as compensatory education, the Court reserves judgment on whether it is appropriate to place Byron at St. Bernard's or a similar institution as part of his regular education. The Court will decide this issue based on the administrative record, including any supplemental evidence if any is justified. As previously stated, the Court must be convinced that FAPE is not possible in District schools and that any given private school placement is appropriate under the IDEA.

### 4. Reimbursement for St. Bernard's related costs for 1994–95

Plaintiffs also seek reimbursement for St. Bernard's related costs for the 1994–95 school year. Ms. Brantley placed Byron at St. Bernard's unilaterally in response to what she considered to be a denial of FAPE. Clearly, pursuant to *Burlington*, such reimbursement is appropriate relief provided the aforementioned requirements are met. However, as the parties now agree, such relief may not be granted on a summary judgment motion as there are genuine issues of material fact regarding whether the IEP calling for Byron's placement in a public school was inappropriate and whether the private placement at St. Bernard's by Ms. Brantley was proper under the IDEA. *Burlington*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). This decision will be made based on the administrative record by a preponderance of the evidence, giving due weight to the decisions of the HO and HRO. *See Independent School District No. 283 v. S.D.*, 88 F.3d 556 (8th Cir.1996).

### B. Disability Discrimination

Plaintiffs' second claim is that Byron was discriminated against on the basis of his disability in violation of the ADA, § 504 and the MHRA.[14] Plaintiffs provide four bases for this claim: (1) the District failed to timely assess and diagnose Byron's disability; (2) the District failed to implement Byron's IEP; (3) the District failed to provide reasonable accommodations; and (4) the District disciplined him on the basis of his disability.

The ADA and § 504 provide relief from intentional discrimination whereas the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination. In *Monahan v. State of Nebraska*, 687 F.2d 1164, 1170 (8th Cir.1982), cert. denied, 460 U.S. 1012 (1983), the Eighth Circuit held that, in order to make out a violation of § 504 in the educational context, the plaintiff must show more than a mere failure to provide a free appropriate public education as required by the IDEA.

> The reference in the Rehabilitation Act to "discrimination" must require, we think, something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist. Experts often disagree on what the special needs of a handicapped child are, and the educational placement of such children is often necessarily an arguable matter. That a court may, after hearing evidence and argument, come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under EAHCA, is not necessarily the same thing as a holding that a handicapped child has been discriminated against solely by reason of his or her handicap. An evaluation, in other words, is not discriminatory merely because a court would have evaluated the child differently.... We think, rather, that either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children. *Id.* at 1170–71.

14. Given the parallel nature of the ADA and MHRA and the similarity with which courts have consistently interpreted these two statutes, the Court will apply the following analysis under the ADA to Plaintiffs' MHRA claim also. *See e.g. Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 796 (8th Cir.1996) (recognizing that courts may look to federal cases interpreting analogous federal anti-discrimination statutes for guidance in applying the MHRA); *Lindgren v. Harmon Glass Company*, 489 N.W.2d 804, 808 (Minn.App.1992) (using McDonnell Douglas analysis for disability discrimination claim under the MHRA). Neither party raised any argument to the contrary.

■ The requirement that something more than mere violation of the IDEA must be shown to demonstrate a violation of § 504 applies likewise to the ADA in the context of the education of handicapped children. The Eighth Circuit has held that enforcement remedies, procedures and rights under Title II of the ADA are the same as under § 504. *Pottgen v. Missouri State High School Activities Association,* 40 F.3d 926 (8th Cir.1994). Accordingly, bad faith or gross misjudgment must also be established in order to make out a violation of the ADA in this context. *Hoekstra v. Indep. Sch. Dist. No. 283,* 916 F.Supp. 941 (D.Minn.1996).

■ Three of Plaintiffs' bases for alleging disability discrimination stem from IDEA type educational decisions: the District failed to timely assess and diagnose Byron's disability; the District failed to implement Byron's IEP; and the District failed to provide reasonable accommodations for Byron's disabilities. Plaintiffs have not provided evidence that the District acted with bad faith or gross misjudgment with respect to Byron's education. To the extent the District made any inappropriate decisions, they were, at most, errors in professional judgment.

Plaintiffs' other basis for their disability discrimination claim is that Byron was discriminated against on the basis of his disability when he was suspended or dismissed from school. This claim is arguably different than the type of educational decisions in *Monahan* because it involves discipline as opposed to an educational placement decision. However, even if Plaintiffs need not demonstrate bad faith or gross misjudgment, this basis for Plaintiffs' claim also fails. Plaintiffs have produced no evidence that Byron was discriminated against solely on the basis of his disability. There is no evidence that he was disciplined more severely than similarly situated non-disabled peers and no evidence that he was disciplined because of his disability.[15] Accordingly, because there is no genuine issue of material fact as to the alleged discriminatory discipline of Byron and no sufficient evidence of bad faith or gross misconduct by the District in any of its educational decisions, Plaintiffs' disability discrimination claims based on the ADA, § 504 and the MHRA will be dismissed.

### C. Race Discrimination

■ Plaintiffs claim the District discriminated against Byron on the basis of his race in two different ways.[16] First, Plaintiffs claim there was a racially hostile environment at Capitol Hill. Second, Plaintiffs claim Byron was denied admission to Benjamin Hays Junior High School because of his race. Both claims will be dismissed.

Because Plaintiffs' memorandum is entirely void of legal argument supporting their claims of race discrimination, the nature of Plaintiffs' claim is, for the most part, unclear. Plaintiffs utilize the catch phrase "hostile environment" but do not explain exactly how

---

15. There is at least one case which holds that an allegedly discriminatory decision based on conduct which would otherwise be a valid, non-discriminatory ground for adverse action may still give rise to liability under the ADA if plaintiffs demonstrate a causal connection between the disability and the conduct. *Teahan v. Metro–North Commuter R. Co.,* 951 F.2d 511, 517 (2nd Cir.1991), cert. denied, 506 U.S. 815, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992). There is also case law to the contrary. *Newland v. Dalton,* 81 F.3d 904 (9th Cir.1996) (§ 504 claim); *Collings v. Longview Fibre Co.,* 63 F.3d 828, 832–33 (9th Cir.1995), cert. denied, ── U.S. ──, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996) (ADA claim). It is unnecessary to adopt the view of either the Second or Ninth Circuit because Plaintiffs have presented no evidence that there was a causal connection between the reason(s) for Byron's suspension and/or dismissal and Byron's alleged disability or disabilities.

16. Plaintiffs cite to the Civil Rights Act of 1964, 1991, 20 U.S.C. §§ 1331, 1343(a), in their Complaint. Because this citation is vague and inaccurate, the Court assumes Plaintiffs bring this race discrimination claim pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, et seq. Plaintiffs also bring this race discrimination claim pursuant to the MHRA. As previously stated in the disability discrimination context, the Court will apply the same analysis to Plaintiffs' MHRA claim as it applies to the claim based on the federal statutes—in this instance, Title VI. *See Allen v. Bridgestone/Firestone, Inc.,* 81 F.3d 793, 796 (8th Cir.1996); *Sigurdson v. Isanti County,* 408 N.W.2d 654 (Minn.App.1987), aff'd., 448 N.W.2d 62 (Minn.1989) (utilizing McDonnell Douglas; framework in MHRA race discrimination case.) Once again, neither party has argued to the contrary.

the evidence presented amounts to a legal claim of a hostile racial environment. Regardless of their theory, Plaintiffs' hostile environment claim fails because, in a hostile environment claim, a plaintiff must establish, among other things: (a) that he or she was subject to unwelcome harassment; (b) that the harassment was based on race. *Kopp v. Samaritan Health System, Inc.,* 13 F.3d 264 (8th Cir.1993) (Title VII hostile environment sexual harassment claim). Plaintiffs have not established that any of the alleged activity undertaken by the school was based on Byron's race.

Plaintiffs' evidence of a "hostile environment" consists solely of the sporadic observations of one individual, Ms. McManus, a Caucasian parent of a student at Capitol Hill. At the initial due process hearing, Ms. McManus testified that her son and some of his friends, all of whom are Caucasian, were involved in a food fight but were not disciplined whereas Byron and other African–American students were disciplined. She also testified that, on approximately 8–9 occasions during the 1993–94 school year she observed that tables of white students were chosen by lunchroom employees to use the gym while she did not observe black students using the gym. Finally, based on five visits to the school's outer office where the disciplinary review board met, Ms. McManus testified that she noticed more minorities than non-minorities present.

Ms. McManus' testimony is insufficient for Plaintiffs' to survive summary judgment. Her observations regarding gymnasium use and the alleged disproportionate number of children before the disciplinary committee were based on limited visits to the school and provide no evidence that any of these children were similarly situated with Caucasian children. Further, her testimony that her child and some of his Caucasian friends were involved in a food fight yet were not disciplined when African–American students were disciplined is likewise not sufficient to raise

an inference of racial discrimination. There is no evidence that the school officials even knew these Caucasian individuals were involved in the food fight when they decided whom to discipline.

Plaintiffs also claim Byron was discriminated against on the basis of his race when he was refused admission to Benjamin Mays Junior High School.[17] Assuming Plaintiffs established a prima facie case of discrimination, Plaintiffs' claim fails because Defendant has submitted two non-discriminatory reasons that Byron was denied admission. First, there is testimony from the initial hearing that Byron's application for the 1993–94 school year was received after the April 3, 1993 deadline. Students who applied after the deadline were placed on a waiting list behind many other students who submitted timely applications. The District also submits that Byron was denied admission based on the District's desegregation plan. Plaintiffs have not challenged the legitimacy or constitutionality of this plan. Because Plaintiffs have produced no evidence to demonstrate that these non-discriminatory reasons are pretextual, and because Plaintiffs have introduced insufficient evidence to establish a hostile environment claim, their race discrimination claims will be dismissed.

### D. *Section 1983*

■ Plaintiffs' final claim is brought pursuant to 42 U.S.C. § 1983 for violation of IDEA procedures. Specifically, Ms. Brantley requested a special education due process hearing on June 10, 1994, but the hearing did not begin until July 26, ended August 29, and an initial decision was not rendered until December 2, 1994. Plaintiffs claim this delay in receipt of a decision violated 34 C.F.R. § 300.512 (1996), which requires that, not later than 45 days after a request for an initial due process hearing, a final decision will be reached. Plaintiffs seek monetary damages.

---

**17.** Because Plaintiffs have produced no direct evidence of intentional discrimination, they must rely on the burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This analysis applies likewise to Title VI claims. *Wade v. Missis-*

*sippi Co-op Extension Service,* 528 F.2d 508 (5th Cir.1976); *Love v. Duke University,* 776 F.Supp. 1070 (M.D.N.C.1991), aff'd., 959 F.2d 231, 1992 WL 60230 (4th Cir.1992). Plaintiffs' claim fails under *McDonnell Douglas.*

■ Section 1983 provides a cause of action for violation of certain federal rights but does not create any new substantive rights. *Mrs. W. v. Tirozzi,* 832 F.2d 748 (8th Cir.1987). It provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.... 42 U.S.C. § 1983 (1982).

Plaintiffs may bring a cause of action pursuant to § 1983 to remedy violations of both the federal constitution and federal statutes. *Maine v. Thiboutot,* 448 U.S. 1, 5–6, 100 S.Ct. 2502, 2504–05, 65 L.Ed.2d 555 (1980). However, deciding whether violation of a federal statute gives rise to a § 1983 claim is a two-step process. First, the Court must decide whether the claim involves the violation of a federal right as opposed to a mere violation of federal law. Factors to be considered are: (a) whether the statutory provision in question was intended to benefit the plaintiff; (b) whether the statute creates a binding obligation on the state government as opposed to merely expressing a congressional preference; and (c) whether the interest asserted by the plaintiff is sufficiently specific and definite as to be within the competence of the judiciary to enforce. *Arkansas Medical Soc., Inc. v. Reynolds,* 6 F.3d 519, 523 (8th Cir.1993). Second, the Court must determine if Congress has foreclosed a § 1983 cause of action. *Id.* The Eighth Circuit has already held that a § 1983 claim may be brought based on the IDEA. *Digre v. Roseville Schools Indep. Dist. No. 623,* 841 F.2d 245, 250 (8th Cir.1988). Thus it has been settled that Congress has not foreclosed a § 1983 cause of action pursuant to the IDEA. The only issue is whether a federal right is created by the IDEA's implementing regulations, thus giving rise to a § 1983 claim. The Eighth Circuit has not yet determined whether violation of a federal regulation can form the basis for a § 1983 violation. Other Circuits are split on the issue.

The Sixth Circuit has held that, because federal regulations have the force of law, they may create federal rights enforceable under § 1983. *Loschiavo v. City of Dearborn,* 33 F.3d 548 (6th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1995) In *Loschiavo,* the regulations at issue were promulgated by the Federal Communications Commission in order to preempt discriminatory local ordinances. 47 C.F.R. § 25.104. *Id.* at 552–53. The Fourth Circuit has held that an administrative regulation cannot create an enforceable § 1983 interest not already implicit in the enforcing statute. *Smith v. Kirk,* 821 F.2d 980 (4th Cir.1987). In *Smith v. Kirk,* plaintiffs brought suit pursuant to the Social Security Act, 42 U.S.C. § 422, claiming they were entitled to certain special equipment for vocational rehabilitation. The court examined § 422 and found no entitlement to rehabilitation services and thus no enforceable right. *Id.* at 984. The court rejected the argument that mandatory language contained in 34 C.F.R. § 361.110, et seq., alone created a federally protected right for purposes of § 1983. *Id.*

■ The Court agrees with the Fourth Circuit that a federal regulation alone does not create a federal right for purposes of a § 1983 cause of action. However, because there is an enforceable § 1983 interest already implicit in § 1415 for procedural violations, Plaintiffs may bring suit to enforce procedural rights contained in the IDEA's implementing regulations. The IDEA provides federal funding to state and local agencies for the education of handicapped children, conditioning the funding on compliance with extensive procedural and substantive requirements, and upon development of a policy that assures that all children with disabilities will receive a "free appropriate public education." 20 U.S.C. § 1412; *Digre v. Roseville Schools Ind. Dist. No. 623,* 841 F.2d 245 (8th Cir.1988). The IDEA "mandates that participating states extend to disabled children, parents, teachers, school officials, and educational institutions a host of procedural protections and administrative

safeguards." *Light v. Parkway C–2 School District*, 41 F.3d 1223, 1226–27 (8th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2557, 132 L.Ed.2d 811 (1995).

Section 1415(b)(1), entitled "Required procedures; hearing" states:

(1) The procedures required by this section shall include, *but shall not be limited to:*

... (E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

(2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. 20 U.S.C. § 1415 (emphasis added).

The relevant regulation provides:

(a) The public agency shall ensure that not later than 45 days after the receipt of a request for a hearing—

(1) A final decision is reached in the hearing; and

(2) A copy of the decision is mailed to each of the parties.

(b) The SEA shall ensure that not later than 30 days after the receipt of a request for a review—

(1) A final decision is reached in the review; and

(2) A copy of the decision is mailed to each of the parties.

(c) A hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs (a) and (b) of this section at the request of either party.... 34 C.F.R. § 300.512 (1996).

First, Congress specifically intended that the procedures required by § 1415 are not exclusive by stating in subsection (b)(1) that the procedures required by this section "shall include, but shall not be limited to" those specifically enumerated. Second, Congress intended the required procedures to insure the opportunity to present complaints with respect to any matter relating to the provision of FAPE. Without a defined time frame within which these complaints must be resolved, the guarantee of FAPE would be meaningless.[18] Accordingly, the Court holds that 34 C.F.R. § 300.512 creates a federal right for purposes of a § 1983 cause of action.

The Second Circuit has held that a § 1983 suit may be brought to enforce procedures enumerated in the IDEA's regulations.[19] In *Mrs. W. v. Tirozzi,* 832 F.2d 748 (2nd Cir. 1987), plaintiffs brought a § 1983 claim alleging violations of 34 C.F.R. § 76.780 (requiring a state to adopt a written complaint resolution procedure "CRP" for receiving and resolving complaints that the state or a local agency is violating the EHA or its regulations), 34 C.F.R. § 76.781(a) (requiring the state to include in its complaint resolution procedure a 60–day time limit within which the investigation must be carried out),

---

**18.** Further, the Third Circuit has held there is an express cause of action under the IDEA for violation of the procedural protections contained in the IDEA and its implementing regulations. *Beth V. v. Carroll,* 87 F.3d 80 (3d Cir.1996). In *Beth V.,* the plaintiffs alleged violations of Department of Education regulations, 34 C.F.R. § 300.661 (1995) and 45 C.F.R. § 100b.780–.781 (1980), which require the state agency to have procedures for the receipt and resolution of complaints that a public agency has violated a requirement of the IDEA or the related regulations. These regulations impose a time limit of 60 days for the state to carry out an independent on-site investigation in response to such complaints. The court reasoned that because the attempt to invoke the complaint procedures arose out of the

inability of the children involved to secure a satisfactory education, the regulatory violations directly implicated the provision of a free appropriate public education as required by § 1415(b)(1)(E). Further, the court observed that "the procedural safeguards undergirding the IDEA scheme lie at the core of § 1415(e)(2) and its authorization of suit." *Id.* at 86. The *Beth V.* court's decision demonstrates that the regulations implementing § 1415 simply define rights already implicit in the IDEA.

**19.** The Eighth Circuit specifically did not reach this issue in *Heidemann v. Rother,* 84 F.3d 1021, 1032, 1033 (8th Cir.1996) because the plaintiff sought general and punitive damages of a type which are not available under the IDEA.

and 34 C.F.R. § 76.781(c) (requiring the state to inform complainants that they have a right to request a review of the state's final decision by the United States Secretary of Education.) The Court focused on the 1986 amendment to the EHA, which effectively overruled the Supreme Court decision in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984).

In *Smith v. Robinson*, the Supreme Court held that the EHA is the exclusive avenue to pursue a claim for a publicly financed special education. The amendment, enacted in 1986, states that "[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 ..., or other Federal statutes protecting the rights of handicapped children...." 20 U.S.C. § 1415(f). The legislative history states that § 1415(f) was designed to "reestablish statutory rights repealed by the U.S. Supreme Court in *Smith v. Robinson*, and to "reaffirm, in light of this decision, the viability of section 504, 42 U.S.C. § 1983, and other statutes as separate vehicles for ensuring the rights of handicapped children." *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2nd Cir.1987) (*citing* H.R.Rep. No. 296, 99th Cong., 1st Sess. 4 (1985)). In light of this clear statutory language and legislative history, the court held that Congress intended that a § 1983 claim could be based on the EHA and its regulations. *Id.* at 755.

Because the Court holds that Byron's right to a timely due process hearing and decision is an enforceable right, Plaintiffs' § 1983 claim will not be dismissed. However, the Court notes that in order to recover, Plaintiffs must demonstrate that they were in fact injured by the delay in receipt of a hearing decision and must demonstrate that such relief is available under § 1983 and the IDEA. *See Heidemann*, 84 F.3d at 1033 (holding § 1983 claim based on violation of the IDEA must fail because relief requested is not available under the IDEA). In *Miener v. State of Missouri*, 800 F.2d 749 (8th Cir. 1986), the Eighth Circuit dismissed a § 1983 claim predicated on violations of the Due Process Clause because the Court believed there was no way Plaintiff was injured by

any of the procedural inadequacies alleged. *Id.* at 755. Likewise, Plaintiffs § 1983 claim will fail ·if they do not demonstrate injury from the delayed hearing.

### III. CONCLUSION

The Court will address the majority of Plaintiffs' IDEA claims based on the administrative record. As the Court held at the July 25, 1996 hearing, the parties are to submit any requests for the submission of additional evidence by August 30, 1996. Any such evidence to supplement the administrative record will be received if there is a "solid justification" for it. *Independent School District No. 283 v. S.D.*, 88 F.3d 556 (8th Cir. 1996). After either party moves for a decision based on the administrative record, the Court will review the record and, based on a preponderance of the evidence, and giving due weight to the HO and HRO decisions, decide the following: (a) whether a future placement for Byron at St. Bernard's or a similar institution as a form of compensatory education is warranted; (b) whether a future placement for Byron at St. Bernard's or a similar institution as part of his regular educational program is warranted; and (c) whether Plaintiffs are entitled to reimbursement for St. Bernard's related costs for the 1994–95 school year. Plaintiffs' claims for compensatory and punitive damages, and money damages as remedies for the past denial of FAPE will be dismissed. Further, because Plaintiffs have not submitted sufficient evidence to defeat Defendant's motion for summary judgment on the disability and race discrimination claims, both discrimination claims will be dismissed. Finally, Plaintiffs have presented a fact issue for a § 1983 claim for procedural violations of the IDEA and its implementing regulations. However, in order to recover on that claim, Plaintiffs must demonstrate damage resulting from any such violations. Plaintiffs have requested a jury trial on the § 1983 claim.

Accordingly, upon review of the files, motions and proceedings herein,

**IT IS ORDERED:**

That Plaintiffs' motion for partial summary judgment is DENIED and Defendants' motion for summary judgment is GRANT-

ED in part and DENIED in part as follows:

1. Plaintiffs' IDEA claim for general and punitive damages is DISMISSED.

2. Plaintiffs' IDEA claim for money damages as a result of the denial of FAPE is DISMISSED.

3. Plaintiffs' IDEA claim for compensatory education in the form of future placement at St. Bernard's or a similar institution remains pending a decision based on the administrative record.

4. Plaintiffs' IDEA claim for a future placement at St. Bernard's or a similar institution remains pending a decision on the administrative record.

5. Plaintiffs' claim of disability discrimination in violation of the ADA, § 504 of the Rehabilitation Act and the MHRA is DISMISSED.

6. Plaintiffs' claim of racial discrimination in violation of Title VI of the Civil Rights Act of 1964 and the MHRA is DISMISSED.

7. Plaintiffs' § 1983 claim for violation of the procedural rights contained in the IDEA and its implementing regulations remains.